# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2454

_____

Napoleon Hartsfield,

     Plaintiff - Appellant,

v.

Nurse Janice Colburn, et al.,

     Defendants - Appellees.

Appeal from the United States
District Court for the
Southern District of Iowa.

_____

Submitted:  January 11, 2007
Filed: July 19, 2007

_____

Before LOKEN, Chief Judge, BYE and SHEPHERD, Circuit Judges.

_____

LOKEN, Chief Judge.

Iowa inmate Napoleon Hartsfield alleged in his 42 U.S.C. § 1983 complaint that five defendants were deliberately indifferent to his serious medical needs when they delayed referring him to an oral surgeon to have three teeth extracted while he was a pretrial detainee at the Scott County Jail.  In a prior appeal, we reversed the grant of summary judgment in favor of four defendants and remanded for further proceedings. Hartsfield v. Colburn, 371 F.3d 454 (8th Cir. 2004).

On remand, the magistrate judge[1] conducted an evidentiary hearing.  See 28 U.S.C. § 636(b)(1)(B).  During the hearing, one defendant was voluntarily dismissed. The remaining defendants are Nurse Janice Colburn, a full-time employee at the Jail, Dr. Scott Ludwig, a private physician hired to provide medical services at the Jail, and Captain Michael McGregor, who was responsible for transporting inmates to medical appointments.  Following the hearing, the magistrate judge filed a Report and Recommendation that judgment be entered in favor of these three defendants.  The district court[2] reviewed *de novo* the portions of the Report to which Hartsfield objected and adopted it in full.  See 28 U.S.C. § 636(b)(1).  Hartsfield appeals.  When an inmate challenges the conditions of his confinement and the evidence is gathered in this fashion, the hearing before the magistrate judge is the equivalent of a bench trial, and we review the district court's findings of fact for clear error.  See Choate v. Lockhart, 7 F.3d 1370, 1373 n.1 (8th Cir. 1993); Moody v. Proctor, 986 F.2d 239, 241 (8th Cir. 1993).  We affirm.

Hartsfield entered the Scott County Jail on October 4, 2001.  Jail policy required inmates to submit sick call requests to receive medical treatment.  On October 20, Hartsfield submitted a sick call request reciting, "Tooth need[s] pulling it hurts like mad and I'm in se[vere] pain."  Dr. Ludwig reviewed the request and prescribed ibuprofen, a pain-relieving medication.  Dr. Ludwig testified that, because he is not a dentist, his standard response to non-emergency requests for dental care is to prescribe a pain reliever without examining the inmate and then to make an appointment for the inmate to see a dentist if the pain medication is not effective.  The district court found that, after October 20, Hartsfield was allowed to purchase ibuprofen from the jail commissary whenever he requested.

---

[1]The HONORABLE CELESTE F. BREMER, United State Magistrate Judge for the Southern District of Iowa.

[2]The HONORABLE JAMES E. GRITZNER, United States District Judge for the Southern District of Iowa.

In the following weeks, Nurse Colburn acknowledged that Hartsfield made "constant" complaints about continuing tooth pain, headaches, and problems eating and sleeping, and he regularly asked to see Dr. Ludwig. Colburn responded by instructing Hartsfield to submit another sick call request. She also reported his complaints to Dr. Ludwig "at least once a week." Hartsfield testified that he also complained directly to Dr. Ludwig when they met by chance in a hallway. Ludwig, too, told Hartsfield to file another sick call request if he needed further medical attention. Ludwig did not recall this encounter.

On November 27, Hartsfield filed a second sick call request that stated, "I've put in slips to get my teeth pulled once in Oct. 2001 now I will file a lawsuit cause I'm in pain and can't get medical treatment." Colburn and Ludwig promptly scheduled an appointment and on December 5 Hartsfield was seen by Dr. David Anderson, a private oral surgeon who treats patients referred by the Jail. An x-ray of Hartsfield's mouth revealed long-standing decay in two molars causing an exposed root and inflammation around an adjacent impacted wisdom tooth. With Hartsfield's consent, Anderson extracted the three teeth in a five-to-ten-minute procedure, using only local anesthetic. Hartsfield required no further dental treatment. This lawsuit concerns only the delay in scheduling the dental appointment with Dr. Anderson.

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment. Hartsfield was a pretrial detainee at the time in question, but it is now settled "that deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety." Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006), cert. denied, 127 S. Ct. 2128 (2007).

"To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, an inmate must prove that he suffered from one or more objectively

serious medical needs, and that prison officials actually knew of but deliberately disregarded those needs." Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999). Deliberate indifference is equivalent to the criminal law standard of recklessness -- "a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Bender v. Regier, 385 F.3d 1133, 1137 (8th Cir. 2004), quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994). Each step of this inquiry is fact-intensive. We review the district court's factual conclusions for clear error. Jensen v. Clarke, 94 F.3d 1191, 1197-98 (8th Cir. 1996).

Toothaches can be excruciatingly painful, and dental care is an important part of proper health care. Thus, a number of our decisions have reversed the grant of summary judgment in favor of prison officials and prison dentists who delayed three weeks or more in providing dental care for an inmate whose mouth showed obvious signs of serious infection, such as swelling, bleeding, or pus, and who complained of severe tooth pain. See Moore v. Jackson, 123 F.3d 1082, 1085-87 (8th Cir. 1997); Boyd v. Knox, 47 F.3d 966, 969 (8th Cir. 1995); Patterson v. Pearson, 19 F.3d 439, 440 (8th Cir. 1994); Fields v. Gander, 734 F.2d 1313, 1315 (8th Cir. 1984). Consistent with these decisions, we reversed the prior grant of summary judgment in this case because Hartsfield presented evidence "that he suffered extreme pain from loose and infected teeth, which caused blood to seep from his gums, swelling, and difficulty sleeping and eating," and some evidence that defendants may have delayed referring him to Dr. Anderson for non-medical reasons -- Hartsfield's prior misconduct or security issues in seeking care outside the Jail. 371 F.3d at 457.

These issues were thoroughly explored at the evidentiary hearing. The district court found that Nurse Colburn "did not see, or otherwise know, that Hartsfield had bleeding or swelling," a finding supported not only by Colburn's testimony, but also by Dr. Anderson's description of Hartsfield's condition at the time of the December 5 surgery. Therefore, the court found, Colburn did not have actual knowledge of a

serious medical need. In addition, Colburn responded reasonably to Hartsfield's continuing complaints of pain and discomfort by reporting those complaints to Dr. Ludwig,[3] and her instruction to Hartsfield to submit a second sick call request when he continued complaining after October 20 was consistent with procedures set forth in the Scott County inmate manual. Although the question of Hartsfield's serious medical need is not an issue on appeal, the following testimony by Dr. Anderson, the only dentist who testified, is relevant to these deliberate indifference issues:

> Q [by Hartsfield's attorney]. And you would agree that Mr. Hartsfield had a serious medical condition; correct? Or a serious dental medical condition?

> A. Well, I don't know that I agree that it is serious. . . . He didn't have an acute swelling, he didn't have an area that needed to be drained, he didn't come in unable to open his mouth . . . . I don't know that having a tooth extracted is a -- you know, a serious problem. It's done as an outpatient, it's done with local anesthesia, and it's done with hopefully minimal discomfort . . . .

In dental care cases where we reversed the grant of summary judgment, the record contained evidence that prison officials knew the inmate suffered from one or more of the serious conditions described by Dr. Anderson, as did the summary judgment record in this case. But the evidence introduced at trial failed to persuade the fact-finder that these allegations were credible.

Again supported by Dr. Anderson's testimony, the district court further found that Dr. Ludwig followed his standard protocol and acted in accordance with recognized medical standards of care in prescribing ibuprofen and waiting to see if that medication would resolve the problem before referring Hartsfield to a dentist.

---

[3]There is no evidence that Nurse Colburn could have unilaterally referred Hartsfield to a dentist if she and Dr. Ludwig disagreed about the need for referral.

The Court credited Ludwig's testimony that this was strictly a medical judgment, that Hartsfield's treatment was not based "on security or financial concerns, or anything other than the recognized standards of medical care." As Dr. Ludwig saw no complaint of bleeding or swelling on the sick call requests, and received no report of visible bleeding or swelling from Nurse Colburn, the court found that Ludwig's decision not to personally examine Hartsfield was not deliberate indifference. Thus, the court found, "there was no deliberate indifference for failing to schedule an appointment with the dentist without first trying the ibuprofen."

On appeal, Hartsfield argues that, in response to his initial sick call request, Dr. Ludwig prescribed a two-step course of treatment -- ibuprofen followed by referral to a dentist. Therefore, when his continuing complaints demonstrated that ibuprofen was not solving the problem, defendants were guilty of deliberate indifference in requiring him to submit a second sick call request before referring him to a dentist. The district court found that Colburn and Ludwig acted reasonably in requiring a second sick call request and that most of the delay resulted when Hartsfield unreasonably failed or refused to submit one. These findings are not clearly erroneous. Dr. Anderson testified that pain caused by decayed molars and long-impacted wisdom teeth is unpredictable. "Sometimes they can cause a lot of discomfort, a lot of pain, and then it goes away and it may be quiescent for a while." Sick call requests were Jail policy, and it was not unreasonable for medical staff to tell Hartsfield how to request more medical attention and expect him to comply.

Finally, the district court found that if the treatment delay was caused in part by Colburn and Ludwig not adequately communicating their response to Hartsfield's October 20 sick call request, this is evidence of negligence that does not rise to unconstitutional deliberate indifference. We agree. It is undisputed that Dr. Ludwig followed his standard protocol by immediately scheduling an appointment with Dr. Anderson when Hartsfield submitted a second sick call request. Whether Ludwig should have acted sooner, instead of waiting for Hartsfield to submit that request, is

at most a question of negligence. As we said in <u>Logan v. Clarke</u>, 119 F.3d 647, 650 (8th Cir. 1997), "[a]lthough the prison doctors may not have proceeded from their initial diagnosis to their referral to a specialist as quickly as hindsight perhaps allows us to think they should have, their actions were not deliberately indifferent." <u>See also</u> <u>Bryan v. Endell</u>, 141 F.3d 1290, 1291 (8th Cir. 1998) (some delay in treating an inmate's broken hand, even if negligent, did not amount to deliberate indifference).

The third defendant, Captain McGregor, testified that his role was limited to arranging secure transportation for Hartsfield's December 5 appointment with Dr. Anderson after the medical staff scheduled that appointment. The district court found that McGregor did not deny or delay Hartsfield's dental treatment by interfering with or overriding any medical staff decisions to schedule an earlier appointment. On appeal, Hartsfield broadly contends that "defendants" were deliberately indifferent but develops no argument specific to Captain McGregor. In any event, the district court's findings regarding Captain McGregor are not clearly erroneous.

The judgment of the district court is affirmed.

BYE, Circuit Judge, concurring in part and dissenting in part.

I agree the district court's findings regarding Captain Michael McGregor were not clearly erroneous and join the Court in affirming the judgment entered in his favor. I disagree Nurse Janice Colburn and Dr. Scott Ludwig should be excused for their deliberate indifference to the undisputed serious medical needs of Napoleon Hartsfield and, therefore, respectfully dissent from the portion of the Court's opinion affirming the judgment entered in their favor.

# I

Mr. Hartsfield was required to prove two things to prevail on his Eighth Amendment claim: 1) he had an objectively serious medical need; and 2) prison officials knew of the need but deliberately disregarded it. <u>Gordon ex rel. Gordon v. Frank</u>, 454 F.3d 858, 862 (8th Cir. 2006). With respect to the first item, Nurse Colburn and Dr. Ludwig concede he had an objectively serious medical need. Appellees' Br. 15. When he was finally examined by a dentist, he had a significant amount of decay on two molars. The decay had exposed a nerve, and there was some bone loss around the decayed teeth. He also had an impacted wisdom tooth. The dentist had to extract both of the decayed molars, as well as the impacted wisdom tooth. Because Nurse Colburn and Dr. Ludwig did not dispute the seriousness of the medical condition, the only issue left for the district court's resolution was whether the prison officials knew of the need but nevertheless deliberately disregarded it.

The Court's decision hinges in large part on the district court's finding that Nurse Colburn "did not see, or otherwise know, that Hartsfield had bleeding or swelling." Based on this fact-finding, the Court distinguishes this case from our prior decisions where the inmate or prisoner not only complained of severe tooth pain, but prison officials also observed obvious signs of serious infection such as swelling, bleeding or pus. See <u>Moore v. Jackson</u>, 123 F.3d 1082, 1085-87 (8th Cir. 1997); <u>Boyd v. Knox</u>, 47 F.3d 966, 969 (8th Cir. 1995); <u>Patterson v. Pearson</u>, 19 F.3d 439, 440 (8th Cir. 1994); <u>Fields v. Gander</u>, 734 F.2d 1313, 1315 (8th Cir. 1984). In other words, deliberate indifference is present when prison officials not only have knowledge of an inmate's complaints of severe tooth pain, but also observe swelling, bleeding, or pus. Because Nurse Colburn "did not see, or otherwise know, that Hartsfield has bleeding or swelling," the Court concludes the seven-week delay in his medical treatment amounted to "at most a question of negligence." <u>Ante</u> at 7.

The fact that Nurse Colburn did not observe Mr. Hartsfield's bleeding and swelling is hardly surprising, however, given her admission at the evidentiary hearing she *never examined* the patient:

> Q.　From the time that Mr. Hartsfield filed his first complaint or – sorry – his first sick call request on October 20th of '01, through the time of his surgery on December 5th, did you ever personally examine Napoleon Hartsfield?
>
> A.　No, I did not.

Hr'g Tr. at 51, lines 3-7.

Furthermore, it is undisputed Dr. Ludwig *never examined* Hartsfield at any time between October 20 and December 5. Thus, this case is distinguishable from Moore, Boyd, Patterson, and Fields, only in that the deliberate indifference *exceeds* that present in those four cases. Prison officials were at least responsive enough to the medical needs of inmates Moore, Boyd, Patterson, and Fields to take the most basic step of examining them to determine the severity of their condition.

Nurse Colburn and Dr. Ludwig acted pursuant to a policy of non-examination for dental complaints. The prison's admitted policy was to prescribe ibuprofen for dental patients, wait a short period to see if the pain would recede, and if it did not, refer the inmate to a dentist. Having implemented a policy of non-examination, it is incongruous for our court to excuse the delay in Mr. Hartsfield's dental treatment on the ground the prison officials were unaware of the severity of his condition. Under the Court's approach, prison officials can deliberately adopt a policy which shields them from knowledge, and then deny responsibility because they lacked knowledge. This is not mere negligence, but the epitome of deliberate indifference.

Under the facts involved in this case, the district court's finding that Nurse Colburn "did not see, or otherwise know, that Hartsfield had bleeding or swelling" is irrelevant. Pursuant to their adopted policy, Nurse Colburn and Dr. Ludwig should have referred him to a dentist as soon as they knew the ibuprofen was not working. The undisputed evidence shows both Nurse Colburn and Dr. Ludwig knew the ibuprofen was not working and yet still delayed his dental treatment for weeks.

Hartsfield testified he told Nurse Colburn about his tooth pain "[a]lmost every day when she did her rounds[.]" Hr'g Tr. at 17, line 19. "I told her that I had severe pain in my mouth, I couldn't eat, sleep, that I was having headaches[.]" Id. at 17, lines 10-11. He testified Nurse Colburn responded by telling him to "quit complaining and bitching and that she would, you know, see me." Id. at 17, lines 12-13. He also testified Nurse Colburn told him complaining and "threatening to file lawsuits is not going to get me seen no quicker (sic). So I figured she was gonna, you know, talk to someone and let me see the doctor or take me to get medical treatment." Id. at 30, lines 7-11.

Nurse Colburn's testimony did not contradict Hartsfield's. She testified: "After the initial sick call slip, I did make rounds every day and did go to the cell that he [Hartsfield] was in, and it was a constant verbal request, constant verbal request, and he was told to put a sick call slip in." Id. at 47, lines 11-13. She also testified she reported on his condition to Dr. Ludwig "on average at least once a week." Id. at 52, line 10. Thus, the record is undisputed that both Nurse Colburn and Dr. Ludwig knew the ibuprofen was not working, and yet still failed to examine Mr. Hartsfield to determine the severity of his condition, or refer him to a dentist to address his serious medical need.

The only reason given by Dr. Ludwig and Nurse Colburn for delaying treatment for Mr. Hartsfield's serious medical condition is his failure to complete a second sick call slip. The insistence on a second sick call slip was unreasonable. Under the

adopted policy, Nurse Colburn and Dr. Ludwig admit they prescribed a two-part course of treatment with respect to his *first* sick call slip – ibuprofen first, followed by a referral to a dentist if the ibuprofen did not work. Nurse Colburn and Dr. Ludwig failed to follow through with the second part of the prescribed course of treatment after they knew the ibuprofen did not work. The law does not impose upon Mr. Hartsfield the burden of giving prison officials written notice of his serious medical need; he must only prove prison officials knew of his need and deliberately disregarded it. Indeed, our cases suggest the indifference is heightened when an inmate communicates his distress directly, as he did, and prison officials fail to respond. Cf. Gordon, 454 F.3d at 863 ("A reasonable officer would know that it is unlawful for officers to delay medical treatment for an inmate with obvious signs of medical distress, especially one who communicates this distress directly to officers.").

Even assuming arguendo prison policy required Mr. Hartsfield to complete a second sick call slip, the inmate's medical needs should take precedence when there is tension between those needs and a prison's alleged need to adhere strictly to prison policy. See De'Lonta v. Angelone, 330 F.3d 630, 635 (4th Cir. 2003) (reversing summary judgment where the refusal to provide medical treatment was based "solely" on a policy rather than on a medical judgment concerning the plaintiff's circumstances).

II

Nurse Colburn and Dr. Ludwig did not see their patient's serious medical need because they would not examine him. In addition, they ask us to pretend they did not hear his complaints because he would not complete a second written form. Because this shows Nurse Colburn and Dr. Ludwig deliberately disregarded Mr. Hartsfield's serious medical needs, I respectfully dissent.

_____

-11-