# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-3178

_____

Kendrick C. Story,                     *
                                  *
           Appellant,           *
                                  *   Appeal from the United States
     v.                           *   District Court for the Western
                                  *   District of Arkansas.
David Norwood, Captain, Ouachita   *
County Sheriff's Office,           *
                                  *
           Appellee.            *

_____

Submitted: April 12, 2011
Filed: October 17, 2011

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

Kendrick Story, an Arkansas inmate, brought a 42 U.S.C. § 1983 action against several defendants, including David Norwood, a jail administrator at Ouachita County Detention Center. After granting summary judgment to all defendants except Norwood, the district court[1] addressed Story's claim against Norwood on the merits and concluded Norwood's use of force was necessary to ensure his own safety, the

_____

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas, adopting the report and recommendation of the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas.

safety of others, and to regain control of the facility. The district court therefore dismissed Story's claim with prejudice. Story appeals, and we affirm.

I

On May 22, 2007, Story was incarcerated at Ouachita County Detention Center, and resided in the 3-Front area of B-Pod. Due to a misunderstanding, the inmates of B-Pod were denied their scheduled yard time and became disruptive. One inmate stuffed his jumpsuit into a toilet causing it to overflow and flood the pod. Several other inmates, joining this mischief, started breaking lights in the pod. Story and Norwood gave different accounts of how the subsequent events transpired.

According to Norwood, dispatch notified him the lights were out in B-Pod and there was flooding. After retrieving his flashlight from his car, Norwood proceeded to B-Pod, where he observed Story throwing a milk crate toward a light trying to break it. Norwood said Story dropped the milk crate when he saw Norwood, and started cursing. When the gate opened, Norwood ordered the inmates to "catch the wall," but Story did not move. Norwood repeated the command, but Story still would not budge. With his flashlight in hand, Norwood pushed Story two steps forward. Norwood claimed Story started walking toward the wall, but then stopped, turned around, and began grumbling about Norwood touching him. This time, Norwood said, he forcefully pushed Story against the wall. To ensure Story stayed there while he retrieved the jumpsuit from the toilet, Norwood threatened Story with a taser. Norwood testified he never swung his flashlight or hit Story with it. Officer Chris Gill, who was standing nearby, noted he witnessed Story trying to break a light with the water jug. Gill confirmed Story had refused to comply with Norwood's command to get on the wall. Gill observed Norwood push Story twice, but never saw Norwood hit Story.

Story provided a different version of events, which he supported with the testimony of three fellow inmates. According to Story, when Gill and Norwood arrived, he was trying to put the water cooler back onto a milk crate so the water would not get sullied. Story denied breaking any lights in B-Pod and claimed he was actually telling the other inmates to "chill out" so they would not lose their television privileges. Upon seeing Norwood, Story dropped the crate and began to turn away. According to Story, Norwood entered and struck him four times with a heavy metal flashlight. When the assault began, Story said he raised his hands to protect his face, and as a result was hit on his left elbow. He tried to evade the subsequent blows, but Norwood struck him on his left shoulder, and the middle and upper part of his back. Story claimed Norwood never pushed him, but just hit him with a flashlight and then threatened him with a taser. Three inmates located in A-Pod, Gregory Tooks, Roy Malcolm, Jr., and Ray Brewer, corroborated Story's version of events. Tooks and Malcolm, Jr., testified they witnessed Norwood strike Story two to three times with a metal flashlight without provocation. Varying slightly from this account, Brewer said he witnessed Norwood pushing Story against the bars, but only saw Norwood hit Story with the flashlight one time.

Following the incident, at his own request, Story was taken to the hospital for examination. The officer who transported Story to the hospital did not observe any visible injuries on Story such as cuts, bleeding, bruises, or swelling. At the hospital, Story saw Dr. Stephen Tabe, an emergency room doctor at Ouachita County Medical Center. Dr. Tabe conducted a physical examination and although he, too, did not observe any visual signs of injury to Story, when he palpated Story's left elbow Story experienced pain. Dr. Tabe then ordered X-rays of Story's left elbow and shoulder. The x-rays did not reveal any fractures. Consequently, Dr. Tabe diagnosed Story with a left elbow contusion, gave him a prescription for Advil, and suggested he follow up with his regular doctor. After Story returned to the jail, Tooks, Malcolm, Jr., and Brewer each saw Story and none observed any injuries, but they did indicate Story appeared to be in pain.

Starting several weeks after the incident, Story regularly visited the hospital. He saw Dr. Tabe twice who did not find evidence of a back injury. Dr. Tabe did ultimately determine, based on Story's claim of ongoing back pain, it would be best for Story to see an orthopedic specialist to get an MRI and determine whether Story was suffering from a disc problem. Story was next seen on several occasions by Nurse Connie Hubbard, who could not determine the cause of Story's pain in part because X-rays did not show any fractures or displacements. Nurse Hubbard referred Story to Dr. Robert Scott, who after performed an MRI and concluded Story was suffering from sciatica caused by degenerative disc disease and early bilateral facet joint arthropathy. According to Dr. Scott, these diagnoses were inconsistent with acute trauma because both are chronic ongoing conditions but acute trauma could have aggravated the symptoms of degenerative disc disease.

Following these events, Story filed a 42 U.S.C. § 1983 action against Ouachita County Sheriff Paul Lucas, Chief Deputy Joe Strickland, Norwood, and Gill. After discovery, all of the defendants moved for summary judgment. Based on a report and recommendation from the magistrate judge, the district court granted summary judgment in favor of Lucas, Strickland, and Gill. The district court referred the claim against Norwood to the magistrate judge for an evidentiary hearing under 28 U.S.C. § 636(b)(1).

After hearing the above-described evidence, the magistrate judge determined that on May 22, 2007, "the inmates were flooding the pod, breaking lights, and being noisy." Report and Recommendation at 23. Upon arriving to the pod, Norwood instructed the inmates to get on the wall, but Story did not. Given the emergent events, which were described as a "riot," the magistrate judge concluded "it was reasonable for Norwood to utilize some amount of force in an effort to ensure his own safety, the safety of others, and to regain control of the facility." Id. The magistrate judge further found the actual force used by Norwood consisted of him twice pushing Story with both hands while holding a large metal flashlight, first pushing Story a few

-4-

steps and the second time pushing Story much harder. The magistrate judge determined this use of force was minimal. In supporting this finding, the magistrate judge reasoned if it were to believe Story's version as to being struck with a large metal flashlight four times, Story would have sustained some visible injuries. The magistrate judge pointed to the medical records which contradicted this version, as did the testimony of the other inmates who did not observe any injuries on Story when he returned from the hospital. Based on its findings as to Norwood being entitled to use some level of force because of the emergent conditions, and as to the force used being minimal, the magistrate judge concluded Norwood's force was objectively reasonable and used in good faith to protect himself, others, and restore order to B-Pod. The magistrate judge recommended judgment be entered in Norwood's favor and Story's claim be dismissed with prejudice.

Story timely objected to the magistrate judge's factual findings and recommendation. After a de novo review of the record, the district court adopted the magistrate judge's report and recommendation, and dismissed Story's claim with prejudice. Story appeals.

II

Story first takes issue with several of the district court's findings of fact as adopted from the magistrate judge's report and recommendation. In particular, Story contends the district court erred in finding Norwood pushed Story twice because the evidence establishes Norwood struck Story four times with a flashlight. He further contends that regardless of what force was used, "the record shows that there was no issue of safety to [Norwood], other inmates or to regain control of the facility," because he "did not refuse to obey a lawful command[,] did not make any threatening remarks[,] nor did he make any physical movement toward [Norwood] but turned away from him moving toward the wall." Appellant Br. at 11, 22. Story essentially

-5-

contends the district court erred in rejecting his version of events and in adopting Norwood's and Gill's versions.

The district court made its findings of fact based on the record from an evidentiary hearing held under 28 U.S.C. § 636(b)(1). This hearing "is the equivalent of a bench trial" and thus "we review the district court's findings of fact for clear error." Hartsfield v. Colburn, 491 F.3d 394, 396 (8th Cir. 2007). A district court clearly errs if its findings are "not supported by substantial evidence in the record, if the finding[s are] based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error has been made." Onstenfeld ex rel. Estate of Davis v. Delo, 115 F.3d 1388, 1393 (8th Cir. 1997); accord Fed. R. Civ. P. 52(a); United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. City of Bessemer City, NC, 470 U.S. 564, 573-74 (1985). Even more, "[w]hen findings are based on determinations regarding the credibility of witnesses, [Federal Rule of Civil Procedure 52(a)] demands even greater deference to the trial court's findings. Id. at 575. Thus, a district court's credibility determinations are virtually unreviewable on appeal. Gill v. Maciejewski, 546 F.3d 557, 563 (8th Cir. 2008) (citing States v. McCarthy, 97 F.3d 1562, 1579 (8th Cir. 1996)); see also Hicks v. Norwood, 640 F.3d 839, 842 n.7 (8th Cir. 2011) ("We note, however, that the decision to credit testimony of witnesses who tell coherent and facially plausible stories that are not contradicted by extrinsic evidence can virtually never be clear error.") (internal quotation marks and citation omitted).

Each of the district court's findings was supported by ample evidence in the record. First, the district court rejected Story's version of events as incredible because it was inconsistent with other evidence in the record. With regard to the amount of force used by Norwood, the district court determined Norwood and Gill's

version was more plausible because Story's version as to Norwood hitting him on his left elbow, left shoulder, and the upper and lower part of his back in a "brutal beating" was contrary to the objective medical evidence.

The statements provided by the physicians who examined Story, as well as Story's fellow inmates, indicate no visible injuries were observed on Story beyond a left elbow contusion. Dr. Tabe, who examined Story within hours of the incident, did not find redness or swelling consistent with a savage beating. The only identifiable injury was a left elbow contusion. But, it is plausible to conclude this injury was sustained when Norwood pushed Story into the wall. Later examinations revealed Story suffers from degenerative disc disease and early bilateral arthopathy, diagnoses Story attempts to relate back to Norwood's use of force. However, these injuries are inconsistent with acute trauma. The symptoms of degenerative disc disease could be aggravated by acute trauma, but the examining doctor was doubtful acute trauma was the cause here. In particular, Story's symptoms could have been aggravated by various causes other than trauma, such as sleeping on the wrong side of the bed. Given the testimonial and medical evidence supporting Norwood's and Gill's version of the amount of force used and the district court's decision to credit this version in light of the lack of supporting evidence for Story's version, we do not find the district court erred in finding Norwood's use of force consisted of him twice pushing Story toward the wall while holding a flashlight, but never striking him.

Second, the district court found the conditions in B-Pod were sufficiently emergent as to make it reasonable for Norwood to use some level of force to ensure his safety, the safety of others, and to restore control over B-Pod. We conclude this finding is also supported by substantial evidence. Gill testified that when he arrived, the pod was flooding and he observed inmates attempting to break the lights. Norwood testified to similar conditions, including observing Story participating in breaking lights. Even Story conceded there was flooding in B-Pod and inmates were breaking lights. Both Tooks and Brewer testified that in addition to the flooding, the

inmates were being noisy. Malcolm, Jr., described the situation as riotous. Gill, Norwood, and Brewer each testified that upon his arrival, Norwood gave an order to the inmates to grab the wall. All three indicated Story was not against the wall when Norwood entered B-Pod and he continued to refuse to grab the wall despite Norwood's repeated direction. Based on this evidence, the district court found the inmates were flooding the pod, breaking lights, and being noisy. Further, even after Norwood ordered the inmates to get on the wall, Story did not. Because we conclude these findings are supported by substantial evidence, we will not overturn them.

Having rejected Story's challenges to the district court's factual findings, we turn next to his legal challenge. Story contends the district court erred in finding Norwood's use of force was reasonable under the circumstances. Whether facts establish excessive force by a preponderance of the evidence is a legal question which we review de novo. Hicks, 640 F.3d at 842 (citing Moody v. Proctor, 986 F.2d 239, 241 (8th Cir. 1993)). "[O]fficers may reasonably use force in a good-faith effort to maintain or restore discipline but may not use it maliciously or sadistically to cause harm." Walker v. Bowersox, 526 F.3d 1186, 1188 (8th Cir. 2008) (per curiam). Whether the force used was reasonable is "judged from the perspective of a reasonable officer on the scene" and in light of the particular circumstances. Graham v. Connor, 490 U.S. 386, 396-97 (1989). In determining whether the force was reasonable and used in good faith, the court may consider several factors, including "the need for applying force, the relationship between that need and the amount of force utilized, the threat the responsible officials reasonably perceived, any efforts used to diminish the severity of a forceful response, and the extent of the injury inflicted." Walker, 526 F.3d at 1188 (8th Cir. 1994) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

We conclude Story failed to show by a preponderance of the evidence that he was a victim of an unconstitutional excessive use of force. The facts as found by the district court establish that when Norwood arrived, the pod was flooding, the inmates

were breaking lights, and the situation was riotous. With the toilet still overflowing, Norwood had to enter quickly and unplug the toilet before the water spread. To do so safely, Norwood needed the inmates to get on the wall, and stay there. He thus instructed Story, among others, to stand against the wall, but Story refused. Consequently Norwood twice pushed Story to the wall with the flashlight in his hand, making some contact with Story but not striking him. Norwood then threatened the use of a taser to keep Story against the wall. These facts do not suggest Norwood was acting with malice or sadistic intent rather than using reasonable force in good faith to restore discipline. The evidence shows Norwood's use of force was minimal and brief, ending when Norwood was certain Story would stay on the wall. It was reasonable for Norwood to use some force to get Story on the wall. We conclude the district court correctly determined Norwood's twice shoving Story toward the wall was reasonable in light of these emergent and unsafe circumstances, and therefore does not amount to an excessive use of force.

## III

On a final note, Story also argues the district court legally erred in requiring him to show some threshold level of injury to succeed on his excessive force claim. Story is correct in noting excessive force claims do not necessarily fail merely because the injury may be *de minimus*. See Hudson, 503 U.S. at 9 (discussing whether the *de minimus* nature of injury would undermine an excessive force claim and concluding "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident"). However, Story's argument mischaracterizes the district court's decision. To the extent the district court considered the severity of Story's injuries, it was in the context of weighing the credibility of Story's version of events. A thorough reading of the district court's decision assures us the district court did not enforce a minimum level of injury as a legal threshold barring Story's claim. Consequently, we conclude Story's claim of legal error to be without merit.

IV

Accordingly, we affirm the judgment of the district court.

_____