# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2583

_____

Kevin Ward

*Plaintiff - Appellant*

v.

Bradley Smith; Dustin Merriett

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: September 22, 2016
Filed: December 21, 2016

_____

Before COLLOTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Kevin Ward sued correctional officers Bradley Smith and Dustin Merriett under 42 U.S.C. § 1983, alleging the officers used excessive force when they administered pepper spray to gain Ward's compliance with orders to submit to wrist

restraints. After conducting a two-and-a-half day bench trial, the district court[1] granted judgment in favor of the officers. Ward appeals the district court's judgment, and we affirm.

I.

After receiving evidence in this case, the district court found the following. On October 26, 2009, Ward was an inmate of the Missouri Department of Corrections (MDOC) as a convicted person serving a sentence of imprisonment and was housed in the Administrative Segregation Unit (Ad Seg) at the South Central Correctional Center (SCCC). Officers Smith and Merriett worked at the SCCC as correctional officers. On that date at approximately 9:20 p.m., Officer Merriett ordered Ward to stop talking to another inmate who was housed in a different cell in Ad Seg. Ward refused the order. Officer Smith approached Ward's cell and ordered Ward to submit to wrist restraints, which would require Ward to place his hands behind his back and through a food port for an officer to apply handcuffs, in order for correctional staff to search Ward's cell. Ward refused the order to submit to wrist restraints.

Officer Smith contacted SCCC medical staff and confirmed that Ward had no medical condition that would prohibit the use of pepper spray to force Ward to comply with the order, and then Officer Smith received authorization from the shift supervisor to use force in the form of pepper spray. Officers Smith and Merriett and a third correctional officer approached Ward's cell, ordered him to submit to restraints, and when he refused administered a three-to-five second burst of pepper spray through the food port in Ward's cell. Approximately ten minutes later, Officer Smith again asked Ward to comply with the order to submit to wrist restraints, and this time Ward refused and placed his mattress in front of his food port. Officer

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

Merriett moved the mattress aside using a barricade removal assistance device, and Officer Smith administered a second round of pepper spray into Ward's cell. During this second incident, Ward received a small cut on his arm.

Shortly thereafter, Ward complied with the request to submit to the wrist restraints. He was restrained, removed from his cell, and placed in a strip-out cell in the Ad Seg unit. The strip-out cell is approximately the size of a telephone booth. The officers removed the wrist restraints, strip searched Ward, removed his clothing from his possession, and provided him a security smock, which is a thin, padded blanket that can be placed over the body to cover the front and back but is open on the sides. Ward tied the smock around his lower body. A jail nurse treated the cut on Ward's arm by washing it with saline solution and placing a bandage over the cut. After officers had completed the search of Ward's cell and removed all personal items as punishment for Ward's failure to comply with an order, Officer Smith approached Ward in the strip-out cell and ordered him to again submit to wrist restraints so that he could be transported back to his cell. Ward responded by placing his hands over his face, and Officer Smith administered pepper spray directly toward Ward's face through the grated walls of the strip-out cell. Ward began coughing and claimed that he had asthma. The nurse returned and confirmed through an oximeter that Ward's oxygen levels were normal.

Officer Smith returned to the strip-out cell and ordered Ward to submit to the wrist restraints. Ward responded by covering his head and upper body with the security smock. Officer Smith placed the pepper spray canister at the food port of the strip-out cell and sprayed the pepper spray for a few seconds at a distance of less than three feet from Ward. Officer Smith claimed he was attempting to direct the spray underneath the security smock and towards Ward's face. At least some of the pepper spray made contact with Ward's bare genitals. After a few minutes, Ward agreed to be restrained, and he was then returned to his cell where he had access to running water but not soap.

-3-

Ward brought this suit, claiming, as relevant, that Officers Smith and Merriett violated his Eighth Amendment right to be free from cruel and unusual punishment, that he sustained injuries from the administration of the pepper spray including suffering the Hydraulic Needle Effect,[2] and that their actions constituted an intentional infliction of emotional distress under Missouri state law.

The district court conducted a bench trial, hearing testimony from Ward, Officer Smith, Officer Merriett, other SCCC employees, and other SCCC inmates. The court also reviewed a video that captured at least the final two administrations of pepper spray to Ward while he was in the strip-out cell.

After the bench trial, the court entered a written judgment, holding there was no Eighth Amendment violation in the administration of pepper spray because Ward had been lawfully ordered to submit to wrist restraints and refused to comply with the orders and the use of force was not disproportionate to the security concerns, and therefore it was not cruel or unusual. As to the fourth administration of pepper spray, the court found, based on the video evidence and Officer Smith's testimony, that Officer Smith did not intentionally spray Ward's genitals; rather, Officer Smith was attempting to direct the spray under the security smock toward Ward's face. The district court also rejected Ward's claim of intentional infliction of emotional distress, concluding Ward had not proven that the sole intent of the use of force was to cause emotional distress.

---

[2]At trial, Ward introduced the MDOC Training Lesson Plan on Pepper Spray Use and Chemical Agent Awareness. That material recommends a six-foot distance when administering pepper spray with the MK-9 canister—the canister used by Officer Smith—because particles from the canister can penetrate layers of soft tissue causing the person to experience the sensation of needles piercing the skin, the Hydraulic Needle Effect.

II.

Ward appeals the district court's adverse judgment. Because the district court's decision was reached after a bench trial, this court reviews the legal questions de novo and the factual determinations for clear error. See Schaub v. VonWald, 638 F.3d 905, 923 (8th Cir. 2011). A district court clearly errs if its findings are "not supported by substantial evidence in the record, if the finding[s are] based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error has been made." Story v. Norwood, 659 F.3d 680, 685 (8th Cir. 2011) (alterations in original) (citation and internal quotation marks omitted). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985).

A.

"After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (alteration in original) (quotation omitted). "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Id. Instead, when a court determines whether a correctional officer's use of force was excessive and in violation of the Eighth Amendment, the court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). "Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and

sadistically." Irving v. Dormire, 519 F.3d 441, 446 (8th Cir. 2008). "Factors to be considered in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury." Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002) (citing Hudson, 503 U.S. at 7).

Ward raises two points of error pertaining to his claim that the use of the pepper spray violated the Eighth Amendment. First, he claims that the district court clearly erred when it determined that Officer Smith did not intentionally administer the pepper spray to Ward's genitals, inflicting severe pain. Second, he submits the district court clearly erred when it found the officers used force to maintain order in the prison instead of finding the use of pepper spray was merely pretext for punishing Ward for his refusal to stop talking to another inmate.

The evidence does not clearly refute the district court's finding that Officer Smith was attempting to administer the fourth shot of pepper spray under the security smock and towards Ward's face. Ward claims that the video "indisputably belie[s]" the district court's finding. Ward provides a frame-by-frame print of the video in his brief and argues that due to the position of the canister when it becomes visible it is obvious that Officer Smith intentionally sprayed Ward's genitals. Officer Smith testified at the trial that he was attempting to direct the spray under the security smock, but he did not deny that pepper spray may have gotten on Ward's genitals. Having reviewed the frame-by-frame photos and the video, we do not find the district court clearly erred in its factual determination. The photos and the video do not definitively show the position of the canister as it is blocked from the view of the camera by Officer Smith's body. Further, the district court was permitted to credit Officer Smith's testimony that he was intending to direct the spray under the smock and toward Ward's face, as witness credibility determinations are within the exclusive

-6-

domain of the district court and are virtually unreviewable on appeal. See Story, 659 F.3d at 685.

Further, the district court found Officer Smith administered pepper spray only after Ward refused the direct orders to submit to wrist restraints and the use of force was necessary to gain Ward's compliance and maintain the safety and security of SCCC. Ward argues on appeal that the district court clearly erred in this factual finding because the evidence showed the use of force was pretext to punish Ward for his refusal to stop talking to another inmate. The district court did not clearly err in deciding the decision to use pepper spray was not pretext to punish Ward and instead the use of force was in direct response to Ward's refusal to comply with the orders to submit to restraints in preparation to be removed from and returned to his cell. The evidence presented showed that when Ward finally complied with the orders, Officer Smith ceased using pepper spray.

B.

Finally, Ward challenges the district court's determination that he failed to prove his claim of intentional infliction of emotional distress under Missouri law. To prove intentional infliction of emotional distress in Missouri, a plaintiff must show "(1) the defendant's conduct was extreme and outrageous; (2) the defendant acted intentionally or recklessly; and (3) the defendant's conduct caused extreme emotional distress resulting in bodily harm. Additionally, the plaintiff must establish that the sole intent in acting was to cause emotional distress." Cent. Mo. Elec. Coop. v. Balke, 119 S.W.3d 627, 636 (Mo. Ct. App. 2003) (citation omitted). Again, as discussed above, we find no error in the district court's determination that Officer Smith employed pepper spray against Ward for the purpose of maintaining the safety and security of SCCC. Accordingly, we agree that Ward has failed to show Officer Smith's "sole intent in acting was to cause emotional distress." Id.

## III.

We affirm the district court's judgment in this matter.

_____