# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3095
_____

Dwain Smith

*Plaintiff - Appellee*

v.

Conway County, Arkansas, A Public Body Corporate and Politic; Mike Smith, In
His Official Capacity as Sheriff for Conway County, Arkansas

*Defendants - Appellants*

Cheryl Eoff, In Her Individual and Official Capacity as Jail Administrator for
Conway County Detention Center

*Defendant*

Jacob Zulpo, In His Individual and Official Capacity as Jailer for the Conway
County Detention Center; Jansen Choate, In His Individual and Official Capacity
as Jailer for the Conway County Detention Center; Rick Emerson, In His
Individual and Official Capacity as Jail Administrator for Conway County
Detention Center

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 16, 2014
Filed: July 16, 2014
_____

Before RILEY, Chief Judge, BENTON and KELLY, Circuit Judges.
_____

RILEY, Chief Judge.

On the morning of February 28, 2012, police officers arrested Dwain Smith on a charge of delivering a controlled substance (hydrocodone) and took him to the Conway County, Arkansas (county), jail. Later that day, a jailer, Jacob Zulpo, with the assistance of a fellow jailer, Jansen Choate, used a taser on Smith as Smith lay moaning in his bunk complaining he was in pain and could not get up. Zulpo had not received any training on the use of a taser before he tased Smith. The county jail administrator, Rick Emerson, had encouraged both Zulpo and Choate to use a taser as needed for security and for compliance at the jail. Emerson even posted signs on the jail walls, one of which (according to Zulpo) read, "Failure to immediately comply with orders of jail staff, you will be tased."

Smith brought this 42 U.S.C. § 1983 action alleging, as relevant in this appeal, excessive use of force by Zulpo and Choate and a failure to train or supervise by Emerson, in their individual and official capacities. Smith also brought claims against the county and Sheriff Mike Smith (Sheriff Smith) in his official capacity. The district court[1] denied qualified immunity to Zulpo, Choate, and Emerson and denied summary judgment to the county and to the four individual defendants in their official capacities on all claims but one. The defendants bring this interlocutory appeal. We affirm in part and dismiss in part.

_____

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

-2-

I.    BACKGROUND

   A.    Facts[2]

Police officers arrested Smith, a veteran of the Vietnam War, for delivering hydrocodone and took Smith to the county jail. During the intake process, Smith informed the jailers he suffered from lower back pain and other medical problems, including post-traumatic stress disorder. After eight hours in the jail, Smith informed his jailers he was in pain. Although the jailers gave Smith ibuprofen, they denied Smith's requests for his prescription medications and for medical care. About an hour later, jailers Zulpo and Choate escorted Smith to a different cell block where Smith was placed in a cell by himself. Smith was fully compliant during this move and did not need assistance.

A few hours later, Smith started yelling that he was in pain. Jail administrator Emerson instructed Zulpo and Choate to take Smith to the jail's medical observation cell. "When Choate and Zulpo entered . . . Smith's cell, he was lying down, rocking back and forth, moaning," on his bunk. What happened next is disputed.

Zulpo alleges after he placed his hand on Smith's shoulder, Smith started to "push and kick at" Zulpo and "started to turn violent." Zulpo applied a pressure point to Smith's ear "to get his attention." Smith sat up and retreated back into the bunk, toward the wall, farther away from Zulpo and Choate. Around this point, according to Choate, "Zulpo was trying to get ahold of [Smith], to kind of control him, and when doing this, Zulpo was accidently kicked in the mouth." Choate did not think Smith was trying to kick Zulpo—the kick was "unintentional." Zulpo stated in his incident report that Smith kicked him in the chest. Smith's descriptions of the kick

<hr>

[2]"For this interlocutory appeal of the district court's denial of qualified immunity, . . . we accept the district court's findings of fact, taken in the light most favorable to" the non-moving party, Smith. Roberts v. City of Omaha, 723 F.3d 966, 969 n.1 (8th Cir. 2013).

vary—Smith contends he "accidently" kicked Zulpo either "[d]uring the tasering process," or, alternatively, in "react[ion]" to the pressure point technique.[3]

According to Smith, the officers asked Smith "to get up off of [his] bunk." Smith told the officers he was in pain and *could not* get up. Choate handed a taser to Zulpo. Zulpo told Smith, "You need to comply with our orders or else we're going to be forced to tase [you]." Zulpo tased Smith, who was shirtless, in the abdomen, so that the taser probes inserted into Smith's skin. Smith almost fell off the bunk, but Zulpo caught him. Smith, now lying on the bunk with the taser probes affixed in his abdomen, again told Zulpo he *could not* get up. Zulpo told Smith, "You need to comply with our orders so we don't have to do this anymore." Smith repeatedly said, "I can't get up." Zulpo responded, "We can't help you . . . Mr. Smith, you've got [to get up on your own] or else." While Smith was attempting to sit up, Zulpo tased Smith a second time, saying, "We can do this all night." Smith fell to the floor, crying. During the entire encounter, Smith did not move toward the officers at all or act hostile. Eventually, Smith got up, picked up his mat, and walked to the front of the jail, and when Smith leaned on the wall for support, Zulpo threatened to tase him yet again.

According to Choate, before the incident with Smith, jail administrator Emerson instructed Choate he was "authorized to use a Taser on any inmate in order to get the inmate to comply with orders." Emerson also had posters placed throughout the jail informing inmates "[i]f they didn't comply with [the jailers'] verbal commands, that they were subject to punishment."

When Zulpo went to work at the county jail, he received no training. Before the day Zulpo tased Smith, Zulpo had not "received any type of training on the use of

---

[3]Although Smith admitted to the district court he accidentally kicked Zulpo, now on appeal, Smith denies that he kicked Zulpo at all.

tasering." Emerson told Zulpo and "all the jailers" "to get one [a taser] and use it if [you] need to," meaning, "for your protection, if you're in danger, or for compliance." Zulpo agreed "there were signs posted inside the jail warning inmates that if they failed to comply with orders, that they could be tased." The signs were placed "in the booking area and in the window to each cell block." These postings were "all signed by [Emerson]."

## B.     Procedural History

Smith brought this 42 U.S.C. § 1983 action alleging Zulpo and Choate used excessive force against him, and Emerson failed to train and supervise Zulpo and Choate. Relevant to this appeal, Smith also brought claims of: an unconstitutional policy, practice, and custom alleged against the county, Sheriff Smith, and Emerson; failure to train against the county; and failure to train and supervise against Sheriff Smith. Upon cross-motions for summary judgment, the district court denied summary judgment to Smith, denied requests for qualified immunity by Zulpo, Choate, and Emerson, and denied summary judgment to defendants on the remaining counts at issue here.

## II.     DISCUSSION
### A.     Appellate Jurisdiction

Defendants claim the district court erred in denying qualified immunity to Zulpo, Choate, and Emerson. "Ordinarily, we lack jurisdiction to review the denial of a motion for summary judgment, because it does not constitute a final order." Edwards v. Byrd, 750 F.3d 728, 731 (8th Cir. 2014). Here, however, we have appellate jurisdiction under 28 U.S.C. § 1291 and the collateral-order doctrine to review the district court's denial of qualified immunity. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). "Our jurisdiction in such cases extends only to 'abstract issues of law,' not to 'determination[s] that the evidence is sufficient to permit a particular

finding of fact after trial.'" Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009) (alteration in original) (quoting Johnson v. Jones, 515 U.S. 304, 314, 317 (1995)).

Defendants also claim the county and the individual defendants in their official capacities "are entitled to . . . dismissal since the questions of supervisory and municipal liability are necessarily resolved in Emerson's and the County's favor by the grant of qualified immunity to the individual Appellants." "A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006). "We will exercise pendent appe[llate] jurisdiction over such an appeal only in the 'exceptional circumstance' in which it is 'inextricably intertwined' with the qualified immunity appeal, which occurs when the resolution of the qualified immunity claim 'necessarily resolves the pendent claims as well.'" S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs, 725 F.3d 843, 854 (8th Cir. 2013) (quoting Lockridge v. Bd. of Trs. of Univ. of Ark., 315 F.3d 1005, 1012 (8th Cir. 2003) (en banc)). We do not find such an "exceptional circumstance" here, see, e.g., Nord v. Walsh Cnty., ___ F.3d ___, ___, No. 12-3249, 2014 WL 2884049, at *1 n.2 (8th Cir. June 26, 2014), and we decline to review the district court's order denying summary judgment to the county and to the individual defendants in their official capacities.

### B. Qualified Immunity

"We review 'de novo a denial of summary judgment on grounds of qualified immunity.'" Stoner v. Watlingten, 735 F.3d 799, 802 (8th Cir. 2013) (quoting Small v. McCrystal, 708 F.3d 997, 1003 (8th Cir. 2013)).

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right.'" Tolan v. Cotton, 572 U.S. ___, ___, 134 S. Ct. 1861, 1865

(2014) (per curiam) (alterations and omission in original) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).  "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation."  <u>Id.</u> at ___, 134 S. Ct. at 1866 (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002)).  "A right is clearly established if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  <u>Mitchell v. Shearrer</u>, 729 F.3d 1070, 1076 (8th Cir. 2013) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).

Because Smith was a pretrial detainee, the county "concededly [could] detain him to ensure his presence at trial and [could] subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution."  <u>Bell v. Wolfish</u>, 441 U.S. 520, 536-37 (1979). "Although 'the Eighth Amendment has no application' until there has been a 'formal adjudication of guilt,' the Fourteenth Amendment gives state pretrial detainees—just as the Fifth Amendment gives federal pretrial detainees—rights which are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'"  <u>Walton v. Dawson</u>, ___ F.3d ___, ___, No. 12-4000, 2014 WL 2053835, at *4 (8th Cir. May 20, 2014) (emphasis omitted) (quoting <u>City of Revere v. Mass. Gen. Hosp.</u>, 463 U.S. 239, 244 (1983)).  "Conduct constituting 'cruel and unusual punishment' *a fortiori* constitutes punishment. And the Due Process Clause prohibits *any* punishment of a pretrial detainee, be that punishment cruel-and-unusual or not."  <u>Edwards</u>, 750 F.3d at 732 n.2.

In an Eighth Amendment excessive force case, "the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  <u>Santiago v. Blair</u>, 707 F.3d 984, 990 (8th Cir. 2013) (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992)).  "Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on

the scene' and in light of the particular circumstances." Story v. Norwood, 659 F.3d 680, 686 (8th Cir. 2011) (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)). In making such a determination, "it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

We have previously addressed the use of a taser-like weapon to force compliance in a prison setting. In Hickey v. Reeder, 12 F.3d 754, 756 (8th Cir. 1993), a recalcitrant convicted criminal inmate refused to comply with an order to sweep his prison cell. After ample warning and several discussions with prison officials, one of the officers present shot the inmate with a stun gun. See id. "After recovering from the shock, [the inmate] swept his cell. He continued carrying on, cursing, and threatening to sue the officers until the last officer left." Id. While the district court found the officer "shot [the inmate] because [the officer] feared [the inmate] would become violent," we rejected that assessment: "We can draw no other conclusion than that the stun gun was used on [the inmate] to cause enough pain and harm to force him to sweep his cell, and to make an example out of him." Id. at 758.

While considering "whether such conduct amounts to the wanton and unnecessary infliction of pain forbidden by the Eighth Amendment," we determined "there was no need for physical force to compel [the inmate] to sweep his cell." Id. We reasoned that "[the inmate] was not physically threatening the officers, nor was the stun gun applied for that reason. The relationship between the need for force (zero) and the force used (a painful and incapacitating shock) was excessive." Id. We rejected the defendants' argument "that the Constitution permits the use of summary force to compel compliance with any direct order given in a jail setting, and that such authority is necessary to maintain control of the institution," explaining "[t]his

-8-

represents a fundamental misunderstanding of the law concerning the use of summary force in prison settings. The law does not authorize the day-to-day policing of prisons by stun gun." Id. at 758-59.

Acknowledging the real dilemmas faced by jail personnel, we did not wish to "limit good faith applications of force where it is reasonably thought to be necessary to maintain the order and security of a penal institution, but summary force has yet to be ratified as the *de jure* method of discipline where security concerns are not immediately implicated." Id. at 759. Similarly, we did not "presume to tell the [jailers] how to ensure compliance with their internal housekeeping regulations, but using a stun gun is not a constitutionally permissible option." Id. "*[A]s a matter of law*," we concluded "the use of a stun gun to enforce the order to sweep was both an exaggerated response to [the inmate's] misconduct and a summary corporal punishment that violated [the inmate's] Eighth Amendment right to be free of cruel and unusual punishment." Id. (emphasis added); see also, e.g., Brown v. City of Golden Valley, 574 F.3d 491, 497-98 (8th Cir. 2009) (finding, in the context of a Fourth Amendment excessive force case, "there is a genuine issue of material fact as to whether [an officer] used excessive force [by using a taser] in violation of [the plaintiff's] constitutional rights" when the plaintiff's "principal offense, it would appear, was to disobey the commands to terminate her call to the 911 operator").

We are bound to follow the holding and reasoning of our Hickey precedent, which recognizes prison officials' constitutional ability to use "force"—including a taser—"in a good-faith effort to maintain or restore *discipline*, but not "maliciously and sadistically to cause harm" to a nonviolent inmate who is simply slow to comply with a jailer's non-emergency instruction. Hudson, 503 U.S. at 7 (emphasis added).

### 1. Officer Zulpo

In denying the defendants' motions for summary judgment, the district court first observed that at the time of the incident, Smith was in jail and unarmed. The

district court also noted Smith denied he was "a danger to himself or the officers thereby necessitating the use of force." As to the first tasing, the district court reasoned, "There is some evidence that Mr. Smith kicked Mr. Zulpo, but that evidence is disputed especially as to the timing of the kick in the sequence of events." The district court found "a question of fact as to whether the second tasing was necessary or excessive, given the alleged sequence of events." Consequently, the district court determined "the evidence establishes a genuine issue of material fact concerning whether the force used against Mr. Smith was objectively reasonable in light of the facts and circumstances confronting defendants" and, when viewing the facts in the light most favorable to Smith, Zulpo's tasing of Smith "ma[d]e out a violation of a constitutional right" that was "clearly established." The district court denied Zulpo qualified immunity.

Defendants assert, "The District Court's opinion on [Smith's] excessive force claim against Appellant Zulpo misconstrues at least one critical fact - the undisputed, and indisputable, fact that Appellee Smith kicked Officer Zulpo prior to any deployment of Zulpo's taser - and, in so doing, errs on its qualified immunity analysis." We recognize that a jury could credit Choate's observations that the kick was "accidental" and "unintentional" and could find that a reasonable officer would not respond to an accidental and unintentional kick by deploying a taser. The test is an objective one: "'the perspective of a reasonable officer'" under "the particular circumstances." Story, 659 F.3d at 686 (quoting Graham, 490 U.S. at 396). Assuming a reasonable officer in Zulpo's position—actually being kicked—could believe the kick was purposeful and aggressive, establishing Zulpo's first use of the taser was reasonable, we cannot say the same for the second taser deployment.

Apparently the officers were following Emerson's order to move Smith to a medical observation cell, and defendants claim Smith was yelling and causing a

-10-

disturbance in the jail. As described by the defendants themselves, the second taser shot was fired for the purpose of achieving compliance:

> After Smith kicked [O]fficer Zulpo, Zulpo got a taser from Officer Choate and told the Plaintiff that he needed to comply. When Smith continued his refusal to comply, Zulpo deployed a five second cycle with his taser. Despite being tased and being warned several times that *he needed to comply or he would be tased*, Plaintiff was tased a second time.

(Emphasis added). As to the second taser strike, a jury could find Smith was nonviolent and an objectively reasonable officer would not use a taser on Smith as corporal inducement, given Hickey's pronouncement that such methods cannot be used as a first resort to induce compliance of a nonviolent inmate in routine circumstances. Hickey, 12 F.3d at 758-59. We emphasize the fact that our conclusion might well be different "where security concerns are . . . immediately implicated," id. at 759, or where the force is used as a reasonable last resort to preserve "discipline," Hudson, 503 U.S. at 7. But here, viewing the evidence in the light most favorable to Smith, we see a nonviolent pretrial detainee in pain, seeking help, having taser probes affixed to his abdomen, no longer acting aggressively toward the jailers (if he ever was), and *attempting to comply with Zulpo's orders* to get up. No "security concern" or disciplinary necessity is apparent.

The defendants also contend the law was not clearly established such that under the particular facts of this case, an officer would know that the taser strikes would violate Smith's constitutional rights. While we do not "define clearly established law at a high level of generality," at the same time, "a case directly on point" is not required. Ashcroft v. al-Kidd, 563 U.S. ___, ___, 131 S. Ct. 2074, 2083-84 (2011). At a minimum, with regard to Zulpo's second taser strike, the district court correctly found, inferring Smith was a nonviolent inmate, Smith's constitutional right to be free from being tased for non-compliance was clearly established by Hickey as of the date

-11-

of the incident. "The law does not authorize the day-to-day policing of prisons" either "by stun gun," Hickey, 12 F.3d at 759, or by taser.

## 2. Officer Choate

Smith's claim against Choate must be analyzed independently of Smith's claim against Zulpo. See Heartland Acad. Cmty. Church v. Waddle, 595 F.3d 798, 805-06 (8th Cir. 2010). Yet the two claims are inherently intertwined: "'We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge.'" Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir. 1981) (quoting Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972)); see id. (finding a prison official is "jointly liable for failing to intervene if a fellow officer, albeit his superior, was using excessive force and otherwise was unlawfully punishing the prisoner"). At the time Smith was tased, "it was clearly established that a jail official violates a detainee's due-process rights if the official knows that another official is using excessive force against the detainee but fails to intervene." Edwards, 750 F.3d. at 733.

Here, like Zulpo, Choate was on notice from Hickey that a reasonable officer could not use a taser for "day-to-day policing of prisons." Hickey, 12 F.3d at 759. Although given ample opportunity to intervene after Zulpo's warning to Smith, Choate "fail[ed] to intervene" when Zulpo tased Smith the second time. Putman, 639 F.2d at 423. The district court correctly concluded that when viewing the facts in the light most favorable to Smith, Choate violated Smith's clearly established constitutional right to be free from excessive force. Choate is not entitled to qualified immunity at this stage.

## 3. Administrator Emerson

"To succeed on a claim under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee" like Smith "must show the defendant official was

deliberately indifferent to his rights." Walton, ___ F.3d. at ___, 2014 WL 2053835, at *4 (emphasis omitted).  In order to succeed on his claim against Emerson, Smith "must prove" Emerson "personally knew of the constitutional risk posed by [his] inadequate training or supervision and proximately caused [Smith] injury by failing to take sufficient remedial action."  Id., at *5 (emphasis omitted).

The district court denied qualified immunity to Emerson on Smith's failure to train or supervise claim.  The district court noted the following evidence:  "Emerson was . . . on duty the night Mr. Smith was tased"; Emerson "communicated with" Zulpo and Choate about Smith that night; Emerson had permitted Zulpo and Choate to use tasers in the past, even though Zulpo had no taser training; and Emerson posted signs on the jail walls warning prisoners they would be tased for non-compliance.  "Based on this evidence viewed in the light most favorable to Mr. Smith, the [district c]ourt denie[d Emerson] qualified immunity."

Emerson does not argue a lack of knowledge on his part.  Rather, Emerson offers a lone, general objection to the district court's conclusion—he claims he "is entitled to qualified immunity because the law does not allow for supervisory liability where there is no underlying constitutional violation" by Zulpo and Choate.  See, e.g., Carpenter v. Gage, 686 F.3d 644, 651 (8th Cir. 2012) ("Without a showing that the deputies violated the Constitution, however, there can be no liability for failure to train.").  Emerson states, "Since there is no proof to establish an underlying constitutional violation, Appellant Emerson is necessarily entitled to qualified immunity and summary judgment as a matter of law."  We take Emerson's "no proof" argument as an allegation that the evidence viewed in the light most favorable to Smith is insufficient for a reasonable jury to find Zulpo and Choate violated Smith's clearly established, constitutional rights.  We disagree, as explained above, and we affirm the district court's denial of qualified immunity to Emerson.

## III. CONCLUSION

We affirm the district court's denial of qualified immunity to Zulpo, Choate, and Emerson. We dismiss the rest of the defendants' appeal for lack of interlocutory jurisdiction.[4]

———————————————

[4]On December 16, 2013, defendants filed a "motion to supplement the record." Defendants state one page of a deposition transcript excerpt was inadvertently omitted from a document submitted to the district court. Because the missing transcript page does appear in the record before the district court in document number 36-1 (and in the joint appendix at page 173), the motion is denied as moot. See Fed. R. App. P. 10(a)(1) (stating "the original papers and exhibits filed in the district court" are among the "items [that] constitute the record on appeal").

On December 26, 2013, as amended and supplemented on December 27, 2013, Smith filed "motion[s] to supplement the record," along with proposed additional materials. It is unclear to us whether all of the additional materials were contained in the record before the district court. On the one hand, Smith states he "wishes to supplement the record with the above mentioned documents." Yet he also states the documents would give this court "a clearer assessment of the evidence established before the trial court." Because we must rely on the record in the district court, see id., and we have not relied upon Smith's additional materials here, we deny Smith's motions as moot.