# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2617

_____

Charles Jackson

*Plaintiff - Appellant*

v.

Billy D. Stair, III, individually and in his official capacity with Jacksonville Police Department; Jacksonville Arkansas, City of; Jacksonville Police Department

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: June 6, 2019
Filed: September 12, 2019

_____

Before ERICKSON, WOLLMAN, and GRASZ, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Charles Jackson brought an action for damages under 42 U.S.C. § 1983, alleging various constitutional violations against the City of Jacksonville, Arkansas, the Jacksonville Police Department, and Jacksonville Police Officer Billy D. Stair, III, individually and in his official capacity, after Jackson was detained and tased by

Officer Stair as part of an arrest. The district court granted summary judgment in favor of defendants, and Jackson appealed. For the reasons stated below, we affirm in part, reverse in part, and remand.

I.

On July 23, 2013, Jacksonville Police Department (JPD) officers were dispatched to a dispute in progress at a local business, Vaughn Tire. The dispute arose because Jackson believed that Vaughn Tire had damaged a wheel lug during the course of a repair of Jackson's dump truck. Officer Stair was the first to respond on the scene, where he found Jackson walking with another man. Video evidence[1] shows that Officer Stair asked, "What's going on guys?" In response, Jackson, who was obviously quite agitated, began to yell and point toward another group of men. Officer Stair instructed Jackson to relax, and Jackson replied, pointing at one of the men, "Get him, and I'm gonna relax." Officer Stair directed Jackson to go stand by the patrol car. Jackson began to comply, still yelling, when Officer Stair told him to keep his hands out of his pockets. Jackson reached his left hand into his pocket and stopped immediately in front of Officer Stair to shout that he did not have anything in his pockets. Officer Stair ordered Jackson to turn around. Jackson got louder and did not comply.

Officer Stair pulled out his Taser, pointed it at Jackson, and again ordered Jackson to turn around, or he would be tased. More yelling and pointing ensued from Jackson - at one point Jackson shouted: "You tase me and see what happens." Officer Stair ordered Jackson to turn around five more times before Jackson began to comply. Officer Stair told Jackson to put his hands up, and he did, but he was still facing Officer Stair. Officer Stair again ordered Jackson to turn around, and Jackson did so

___

[1] The record contains video evidence from the patrol car dash camera, and from a camera mounted on Officer Stair's Taser.

-2-

with his hands in the air, but Jackson continued to yell, asking for Officer Stair's badge number and threatening to file a complaint with his supervisor.

Another officer, Kenneth Harness, approached Jackson and attempted to handcuff him. Jackson put his hands behind his back, and then he stated: "Don't hurt my arm." Jackson turned around to face Officer Harness and raised his right fist toward the officer's head. Officer Stair immediately deployed his Taser, and Jackson fell to the ground, kicking his legs. Moments later, and without another warning, Officer Stair deployed his Taser a second time. Officer Stair then ordered Jackson to turn on his stomach or he would be tased again. Officer Stair repeated the order, but Jackson rose to one knee, in the direction of Officer Stair. Officer Stair deployed his Taser a third time. Jackson finally complied with the order to lie on his stomach, and Officer Harness handcuffed him. Jackson was arrested for disorderly conduct.

Jackson filed a complaint under 42 U.S.C. § 1983 against Officer Stair, in his individual and official capacities, the City of Jacksonville (City), and the JPD, alleging that his constitutional rights were violated during the tasing incident.[2] The district court granted summary judgment in favor of the defendants, and Jackson filed a timely notice of appeal.

The record contains copies of the City's Taser policy and evidence of Officer Stair's completion of Taser-specific and general law enforcement trainings upon his hiring. The record also includes documentation of the JPD's "Use of Force Review" of the tasing incident at issue here. Following that investigation, Officer Stair received a written warning and additional use-of-force training.

---

[2] The complaint also alleged violations of the Arkansas Civil Rights Act and claimed that Officer Stair's conduct amounted to a felony under Arkansas law, entitling him to damages. Those allegations are not relevant to this appeal.

II.

We review *de novo* a district court order granting summary judgment, viewing the evidence in the light most favorable to Jackson, and drawing all reasonable inferences in his favor. Schoelch v. Mitchell, 625 F.3d 1041, 1045 (8th Cir. 2010). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We note at the outset that Jackson failed to make any meaningful argument on appeal regarding his claims against the JPD. Those claims are therefore waived. Ahlberg v. Chrysler Corp., 481 F.3d 630, 634 (8th Cir. 2007). Likewise, the complaint alleged violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. However, as noted by the district court, the Fifth Amendment applies only to the federal government or federal actions and does not apply to state and municipality actors as alleged here, Barnes v. City of Omaha, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009); the Eighth Amendment applies only to convicted prisoners, Hott v. Hennepin County, 260 F.3d 901, 905 (8th Cir. 2001); and the Fourteenth Amendment does not apply to excessive force claims involving arrests, which are appropriately reviewed under a Fourth Amendment analysis, Graham v. Connor, 490 U.S. 386, 394-95 (1989). Accordingly, only the First and Fourth Amendment claims, and the claims against the City, are relevant here.

## A. Claims Against the City

Jackson lodges several claims against the City of Jacksonville, including an official-capacity claim against Officer Stair. Jackson argues that the district court erred in granting summary judgment in favor of the City, because Officer Stair's conduct during the tasing incident was consistent with a City policy, custom, or

practice, and because the City had been deliberately indifferent to Officer Stair's conduct. We disagree.

A municipality may be held liable for a constitutional violation under section 1983 if the violation resulted from "(1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." Corwin v. City of Independence, MO., 829 F.3d 695, 699 (8th Cir. 2016) (citations omitted). See also Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658, 690-91 (1978); Mick v. Raines, 883 F.3d 1075, 1079-80 (8th Cir. 2018).

Here, Jackson has not presented any evidence to suggest that the City has created, adopted, or supported any policy or custom that would demonstrate municipal liability. To the contrary, the City has submitted copies of its relevant policies and training manuals, and the City has shown that Officer Stair received specific Taser training on top of his general law enforcement training. Moreover, the City investigated the tasing incident after the fact; as a result, Officer Stair received a written warning, and he was required to undergo additional use-of-force training.

Because Jackson fails to provide the evidence necessary to support his claims of municipal liability, the City is entitled to summary judgment as to Jackson's claims.

### B. First Amendment Claim Against Officer Stair

Likewise, summary judgment in favor of Officer Stair on Jackson's First Amendment Claim is appropriate. The First Amendment protects freedom of speech, and Jackson argues that Officer Stair violated his First Amendment rights by detaining him based on his speech. While the video evidence clearly shows that Jackson was loud and profane during the minutes surrounding the tasing incident, it does not necessarily follow that his arrest was grounded in an effort by Officer Stair

to restrain Jackson's right to express himself. "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." U.S. v. O'Brien, 391 U.S. 367, 376 (1968). Otherwise, any foul-mouthed citizen could bring a constitutional claim against an arresting officer. In this case, there is no evidence to support a First Amendment claim, and summary judgment was therefore appropriate.

## C. Excessive Force Claims Against Officer Stair

Jackson also claims that Officer Stair used excessive force during the tasings in violation of his constitutional rights. The Fourth Amendment guarantees each citizen a right to be free from unreasonable searches or seizures. Where, as here, an excessive force claim is made against a law enforcement officer related to conduct involving an arrest, the Supreme Court has made clear that the conduct should be analyzed under an objective reasonableness standard. Graham, 490 U.S. at 394-96. Such an analysis requires the "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). Relevant considerations include the severity of the crime at issue, whether the suspect posed an immediate safety threat, and whether he was actively resisting arrest or attempting to flee. Id. See also Henderson v. Munn, 439 F.3d 497, 502 (8th Cir. 2006). We judge the relevant facts from the perspective of a reasonable officer on the scene, not with 20/20 hindsight vision. Carpenter v. Gage, 686 F.3d 644, 649 (8th Cir. 2012). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them . . . ." Graham, 490 U.S. at 397.

Here, Jackson was aggressive and noncompliant in response to Officer Stair's directives. Jackson ignored multiple orders to turn around, arguing with Officer Stair

and even threatening him. When Officer Harness attempted to handcuff Jackson, Jackson turned around toward Officer Harness and raised his right fist near Officer Harness's head. At that point, Officer Stair deployed his Taser. A reasonable officer in Officer Stair's position could have viewed Jackson's actions as threatening, resisting arrest, and endangering the safety of an officer. The evidence in the record demonstrates that the first tasing was objectively reasonable.

The second tasing is a different story. When the electric probes from the first tasing struck Jackson, he fell to the ground. Only moments later, and without warning, Officer Stair again deployed his Taser. At the time of this second tasing, Jackson did not appear to pose a threat to law enforcement, resist arrest, or flee - he was on his back, on the ground. Based on the Taser-mounted video, Jackson did not have time to show compliance or continued resistance before the second tasing was deployed. Officer Stair argued that he perceived Jackson to kick his legs out and turn his body as if to confront the officers again. The video footage, however, shows that Jackson was several feet away from the nearest officer, unable to pose a threat from his position on the ground.

The district court ruled that Officer Stair's conduct *as a whole* was reasonable without considering whether the second tasing could be a constitutional violation on its own. See Smith v. Conway County, 759 F.3d 853, 860-61 (8th Cir. 2014) (even if the initial tasing of detainee was justified because he had just kicked a guard, second tasing would be unreasonable if detainee was no longer acting aggressively, no longer posed any immediate security concern, and was trying to comply with guard's orders). In light of the video footage depicting the quick succession of the tasings and dispute as to whether Jackson was resisting the officers or posing a threat at the time of the second tasing, we find that there is a genuine issue of material fact as to whether the second tasing amounted to excessive force.

The third tasing occurred after Officer Stair gave several clear orders for Jackson to stop moving and lay down on his stomach, or he would be tased. Afterward, Jackson moved in the direction of Officer Stair and rose to his knee in an apparent attempt to get off the ground. Officer Stair then deployed his Taser for the third and final time before Jackson complied with his demands and was arrested. A reasonable officer in Officer Stair's position could have perceived Jackson to be resisting arrest and could have feared for his safety. Based on our review of the record, we conclude the third tasing was objectively reasonable.

D. Qualified Immunity

Officer Stair argues that the doctrine of qualified immunity shields him from any liability. Qualified immunity protects a government official from liability in a section 1983 action, unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The court must follow a two-step inquiry in a qualified immunity analysis: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009). A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). The relevant question is whether a reasonable officer would have fair warning that his conduct was unlawful. Brown, 574 F.3d at 499.

As explained above, because the first and third tasings were objectively reasonable, Jackson cannot show a violation of his constitutional rights. The second tasing, however, presents a closer question. If Officer Stair used excessive force during the second tasing, then qualified immunity will protect him from liability *only* if Jackson's constitutional rights were not clearly established at the time of the second

-8-

tasing. When Officer Stair tased Jackson, however, it was well-settled law that the use of force against a non-violent detainee who was not actively fleeing or resisting arrest, or posing a security threat, was unlawful. Id. at 499-500; see also Smith, 759 F.3d at 860-61. If the second tasing amounted to excessive force, then Officer Stair is not entitled to qualified immunity.

### III.

In the instant case, Officer Stair tased Jackson three times. The district court ruled that Officer Stair used a reasonable amount of force to subdue Jackson, considering the officer's conduct as a whole. The court erred by not considering and analyzing each tasing individually. We find the first and third tasings were objectively reasonable, and no Fourth Amendment violation occurred. As to the second tasing, we find there are genuine issues of material fact regarding whether Officer's Stairs use of force was excessive. Jackson failed to present sufficient evidence to establish a First Amendment claim against Officer Stair or to establish municipal liability against the City. We affirm in part, reverse in part, and remand to the district court for proceedings consistent with this opinion.

WOLLMAN, Circuit Judge, concurring and dissenting.

I agree with the court that Officer Stair's first and third tasings were objectively reasonable and that Jackson's First and Fourth Amendment and municipal liability claims are without merit.

When viewed in light of his earlier manifestation of unceasing, rage-filled verbal and physical conduct, Jackson's momentary post-tasered position on the ground does not justify considering it as a clearly punctuated interim of compliance with Officer Stair's earlier commands, and thus the second tasing was not objectively unreasonable. Granted that Jackson had not at that point attempted to rise from the

ground, his earlier-expressed threatened use of force against Officer Harness, when coupled with the nearly hysterical tone of his voice throughout his interaction with Stair and others nearby, justified the continued application of the Taser. It may appear from our chambers-viewed observation of the entire encounter to have been a too-hasty application, but given Jackson's earlier pretasing arm-waving, rant-filled anger and his reluctance to comply with Stair's several earlier-expressed commands and warnings, his momentarily supine position on the ground was hardly a guarantee of a no-longer aggressive subject, as was the case of the medical assistance-seeking detainee in Smith v. Conway.  In a word, then, although Officer Stair's quickly applied application following Jackson's initial fall to the ground may have been ill-advised, I do not believe that it was objectively unreasonable in the circumstances, and so I respectfully dissent from the court's decision to remand the case for a further review of that issue.

———————————————————