# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-2617

_____

Charles Jackson

*Plaintiff - Appellant*

v.

Billy D. Stair, III, individually and in his official capacity with Jacksonville Police
Department; Jacksonville Arkansas, City of; Jacksonville Police Department

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: November 8, 2019
Filed: December 3, 2019

_____

Before ERICKSON, WOLLMAN, and GRASZ, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Charles Jackson brought an action for damages under 42 U.S.C. § 1983, alleging various constitutional violations against the City of Jacksonville, Arkansas, the Jacksonville Police Department, and Jacksonville Police Officer Billy D. Stair, III, individually and in his official capacity, after Jackson was detained and tased by Officer Stair as part of an arrest. The district court granted summary judgment in

favor of defendants, and Jackson appealed. In an earlier opinion, we affirmed in part, reversed in part, and remanded to the district court. See Jackson v. Stair, 938 F.3d 966 (8th Cir. 2019). We subsequently vacated that opinion and granted a petition for rehearing, to clarify our decision in light of this court's recent holdings in Kelsay v. Ernst, 933 F.3d 975 (8th Cir. 2019) (en banc), and Rudley v. Little Rock Police Dep't, 935 F.3d 651 (8th Cir. 2019). Our opinion today recites those portions of our earlier decision for which the substance has not changed. We issue a new, clarifying analysis on the excessive force and qualified immunity claims involving Officer Stair. For the reasons stated below, we again affirm in part, reverse in part, and remand.

I.

On July 23, 2013, Jacksonville Police Department (JPD) officers were dispatched to a dispute in progress at a local business, Vaughn Tire. The dispute arose because Jackson believed that Vaughn Tire had damaged a wheel lug during the course of a repair of Jackson's dump truck. Officer Stair was the first to respond on the scene, where he found Jackson walking with another man. Video evidence[1] shows that Officer Stair asked, "What's going on guys?" In response, Jackson, who was obviously quite agitated, began to yell and point toward another group of men. Officer Stair instructed Jackson to relax, and Jackson replied, pointing at one of the men, "Get him, and I'm gonna relax." Officer Stair directed Jackson to go stand by the patrol car. Jackson began to comply, still yelling, when Officer Stair told him to keep his hands out of his pockets. Jackson reached his left hand into his pocket and stopped immediately in front of Officer Stair to shout that he did not have anything in his pockets. Officer Stair ordered Jackson to turn around. Jackson got louder and did not comply.

---

[1] The record contains video evidence from the patrol car dash camera, and from a camera mounted on Officer Stair's Taser.

Officer Stair pulled out his Taser, pointed it at Jackson, and again ordered Jackson to turn around, or he would be tased. More yelling and pointing ensued from Jackson – at one point Jackson shouted: "You tase me and see what happens." Officer Stair ordered Jackson to turn around five more times before Jackson began to comply. Officer Stair told Jackson to put his hands up, and he did, but he was still facing Officer Stair. Officer Stair again ordered Jackson to turn around, and Jackson did so with his hands in the air, but Jackson continued to yell, asking for Officer Stair's badge number and threatening to file a complaint with his supervisor.

Another officer, Kenneth Harness, approached Jackson and attempted to handcuff him. Jackson put his hands behind his back, and then he stated: "Don't hurt my arm." Jackson turned around to face Officer Harness and raised his right fist toward the officer's head. Officer Stair immediately deployed his Taser, and Jackson fell to the ground, kicking his legs. Moments later, and without another warning, Officer Stair deployed his Taser a second time. Officer Stair then ordered Jackson to turn on his stomach or he would be tased again. Officer Stair repeated the order, but Jackson rose to one knee, in the direction of Officer Stair. Officer Stair deployed his Taser a third time. Jackson finally complied with the order to lie on his stomach, and Officer Harness handcuffed him. Jackson was arrested for disorderly conduct.

Jackson filed a complaint under 42 U.S.C. § 1983 against Officer Stair, in his individual and official capacities, the City of Jacksonville (City), and the JPD, alleging that his constitutional rights were violated during the tasing incident.[2] The district court granted summary judgment in favor of the defendants, and Jackson filed a timely notice of appeal.

---

[2] The complaint also alleged violations of the Arkansas Civil Rights Act and claimed that Officer Stair's conduct amounted to a felony under Arkansas law, entitling him to damages. Those allegations are not relevant to this appeal.

The record contains copies of the City's Taser policy and evidence of Officer Stair's completion of Taser-specific and general law enforcement trainings upon his hiring. The record also includes documentation of the JPD's "Use of Force Review" of the tasing incident at issue here. Following that investigation, Officer Stair received a written warning and additional use-of-force training.

II.

We review *de novo* a district court order granting summary judgment, viewing the evidence in the light most favorable to Jackson, and drawing all reasonable inferences in his favor. Schoelch v. Mitchell, 625 F.3d 1041, 1045 (8th Cir. 2010). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We note at the outset that Jackson failed to make any meaningful argument on appeal regarding his claims against the JPD. Those claims are therefore waived. Ahlberg v. Chrysler Corp., 481 F.3d 630, 634 (8th Cir. 2007). Likewise, the complaint alleged violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. However, as noted by the district court, the Fifth Amendment applies only to the federal government or federal actions and does not apply to state and municipality actors as alleged here, Barnes v. City of Omaha, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009); the Eighth Amendment applies only to convicted prisoners, Hott v. Hennepin County, 260 F.3d 901, 905 (8th Cir. 2001); and the Fourteenth Amendment does not apply to excessive force claims involving arrests, which are appropriately reviewed under a Fourth Amendment analysis, Graham v. Connor, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Accordingly, only the First and Fourth Amendment claims, and the claims against the City, are relevant here.

## A. Claims Against the City

Jackson lodges several claims against the City of Jacksonville, including an official-capacity claim against Officer Stair. Jackson argues that the district court erred in granting summary judgment in favor of the City, because Officer Stair's conduct during the tasing incident was consistent with a City policy, custom, or practice, and because the City had been deliberately indifferent to Officer Stair's conduct. We disagree.

A municipality may be held liable for a constitutional violation under section 1983 if the violation resulted from "(1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." Corwin v. City of Independence, MO., 829 F.3d 695, 699 (8th Cir. 2016) (citations omitted). See also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Mick v. Raines, 883 F.3d 1075, 1079-80 (8th Cir. 2018).

Here, Jackson has not presented any evidence to suggest that the City created, adopted, or supported any policy or custom that would demonstrate municipal liability. To the contrary, the City has submitted copies of its relevant policies and training manuals, and the City has shown that Officer Stair received specific Taser training on top of his general law enforcement training. Moreover, the City investigated the tasing incident after the fact; as a result, Officer Stair received a written warning, and he was required to undergo additional use-of-force training.

Because Jackson fails to provide the evidence necessary to support his claims of municipal liability, the City is entitled to summary judgment.

## B. First Amendment Claim Against Officer Stair

Likewise, summary judgment in favor of Officer Stair on Jackson's First Amendment claim is appropriate. The First Amendment protects freedom of speech, and Jackson argues that Officer Stair violated his First Amendment rights by detaining him based on his speech. While the video evidence clearly shows that Jackson was loud and profane during the minutes surrounding the tasing incident, it does not necessarily follow that his arrest was grounded in an effort by Officer Stair to restrain Jackson's right to express himself. "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Otherwise, any foul-mouthed citizen could bring a constitutional claim against an arresting officer. In this case, there is no evidence to support a First Amendment claim, and summary judgment was therefore appropriate.

## C. Excessive Force Claims Against Officer Stair and Qualified Immunity

Jackson also claims that Officer Stair used excessive force during the tasings in violation of his constitutional rights. Officer Stair responds in the first instance that no excessive force violation occurred. Officer Stair also argues that the doctrine of qualified immunity shields him from any potential liability if excessive force did occur. This case requires us to revisit our jurisprudence governing qualified immunity and the use of force. We have recognized that these cases rely on a fact-intensive analysis, and this case is no exception. Kelsay, 933 F.3d at 980 (quoting Kisela v. Hughes, ___ U.S. ___, 138 S.Ct. 1148, 1153, 200 L.Ed.2d 449 (2018) (per curiam).

The Fourth Amendment guarantees each citizen a right to be free from unreasonable searches or seizures. Where, as here, an excessive force claim is made against a law enforcement officer related to conduct involving an arrest, the Supreme Court has made clear that the conduct should be analyzed under an objective reasonableness standard. Graham, 490 U.S. at 394-96. Such an analysis requires the "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). Relevant considerations include the severity of the crime at issue, whether the suspect posed an immediate safety threat, and whether he was actively resisting arrest or attempting to flee. Id. See also Henderson v. Munn, 439 F.3d 497, 502 (8th Cir. 2006). We judge the relevant facts from the perspective of a reasonable officer on the scene, not with 20/20 hindsight vision. Carpenter v. Gage, 686 F.3d 644, 649 (8th Cir. 2012). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them . . . ." Graham, 490 U.S. at 397.

Qualified immunity protects a government official from liability in a section 1983 action, unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The court must follow a two-step inquiry in a qualified immunity analysis: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009). The first step of the analysis, therefore, requires us to consider whether a constitutional violation (here, excessive force) in fact occurred. If so, qualified immunity does not shield the officer from liability if the constitutional right was clearly established at the time of the violation.

A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). The relevant question is whether a reasonable officer would have fair warning that his conduct was unlawful. Brown, 574 F.3d at 499. We look for "either 'controlling authority' or a 'robust consensus of cases of persuasive authority' that 'placed the statutory or constitutional question beyond debate' at the times of the alleged violation." Kelsay, 933 F.3d at 979 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741-42, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741.

A review of our precedent on this topic confirms, on the one hand, the inherent difficulty of analyzing these fact-intensive cases and, on the other hand, a true attempt to adjudicate them within the guidance of Graham and its progeny. 490 U.S. at 396 (excessive force analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight"). To that end, we have stated: "[I]t is clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." Brown, 574 F.3d at 499. We have also held that qualified immunity protects law enforcement from liability where the suspect was non-compliant and resisted arrest, Carpenter, 686 F.3d at 649-50, or ignored commands from law enforcement, Ehlers v. City of Rapid City, 846 F.3d 1002, 1011 (8th Cir. 2017). Where law enforcement was trying to control a rapidly escalating situation, we have held that the use of force was not unreasonable. See Rudley, 935 F.3d at 654; Cook v. City of Bella Villa, 582 F.3d 840, 851 (8th Cir. 2009). Thus, our challenge in these cases is to look carefully at the facts from the standpoint of a reasonable officer and determine whether the force was excessive, and

– if so – whether the officer had fair warning that his actions violated a clearly established constitutional right.

Here, Officer Stair tased Jackson three times. At the beginning of their encounter, Jackson was aggressive and noncompliant in response to Officer Stair's directives. Jackson ignored multiple orders to turn around, arguing with Officer Stair and even threatening him. When Officer Harness attempted to handcuff Jackson, Jackson turned around toward Officer Harness and raised his right fist near Officer Harness's head. At that point, Officer Stair deployed his Taser. A reasonable officer in Officer Stair's position could have viewed Jackson's actions as threatening, resisting arrest, and endangering the safety of an officer. The evidence in the record therefore demonstrates that the first tasing was objectively reasonable.

The second tasing is a different story. When the electric probes from the first tasing struck Jackson, he immediately fell to the ground. Before Jackson could respond, and without warning, Officer Stair again deployed his Taser. At the time of this second tasing, Jackson did not appear to pose a threat to law enforcement, resist arrest, or flee – he was on his back, writhing on the ground. Based on the Taser-mounted video, Jackson did not have time to react with compliance or continued resistance before the second tasing was deployed. His physical body was still reeling from the initial tasing. Officer Stair argued that he perceived Jackson to kick his legs out and turn his body as if to confront the officers again. The video footage, however, refutes this statement. The video clearly shows that Jackson was several feet away from the nearest officer, unable to pose a threat from his position on the ground.

The district court ruled that Officer Stair's conduct *as a whole* was reasonable without considering whether the second tasing could be a constitutional violation on its own. See Blazek v. City of Iowa City, 761 F.3d 920, 925 (8th Cir. 2014) (separating each "discrete use of force for consideration under the Fourth

Amendment"). See also Rudley, 935 F.3d at 653; Smith v. Conway County, 759 F.3d 853, 860-61 (8th Cir. 2014) (even if the initial tasing of detainee was justified because he had just kicked a guard, second tasing would be unreasonable under the Eighth Amendment if detainee was no longer acting aggressively, no longer posed any immediate security concern, and was trying to comply with guard's orders). Because we believe the second tasing stands on its own, the district court erred by not analyzing it as a separate use of force.[3] In light of the video footage depicting the quick succession of the tasings and the dispute as to whether Jackson was resisting the officers or posing a threat at the time of the second tasing, we find that there is a genuine issue of material fact as to whether the second tasing amounted to excessive force. We hold that summary judgment was granted in error with regard to the second tasing.

Officer Stair argues that qualified immunity shields him from any potential liability related to the second tasing because Jackson did not have a clearly established right to excessive force at the time. In support of this argument, Officer Stair cites to our recent decisions in Kelsay and Rudley.

In Kelsay, an en banc panel of this court held that qualified immunity protected an officer from liability in a case involving a non-compliant suspect who ignored instructions and walked away from the arresting officer, even though the suspect was not actively resisting arrest or posing a danger. 933 F.3d at 980. The district court had rejected the qualified immunity defense, finding that the officer violated a clearly established right, but this court disagreed and distinguished the cases relied on by the district court, because of the unique facts at issue in Kelsay. Id. at 980-81.

---

[3] The dissent states that, because the second tasing happened quickly, a "clearly punctuated interim of compliance" did not occur. We agree that Officer Stair acted with too much speed and without providing Jackson a chance to comply, but we also believe that it was unreasonable for Officer Stair to effectively "kick him while he was down" without considering whether a second tasing was excessive.

"Decisions concerning the use of force against suspects who were compliant or engaged in passive resistance are insufficient to constitute clearly established law that governs an officer's use of force against a suspect who ignores a command and walks away." Id. at 980. Unlike the plaintiff in Kelsay, however, at the time of the second tasing, Jackson did not ignore law enforcement commands; in fact, no commands were given. And, Jackson was writhing on the ground, physically unable to walk away or flee. Officer Stair's successive tasing of Jackson, when Jackson was several feet away from the nearest officer, was unnecessary and, in a word, *excessive.* Jackson did not appear capable of posing a danger to law enforcement, he was not actively resisting arrest, and he was not fleeing.

Likewise, in Rudley, this court determined that the evidence showed an ongoing, physical altercation "involving aggressive behavior and a 'chaotic and combative' scene" in which the plaintiff was actively resisting arrest. 935 F.3d at 654. Under those circumstances, Rudley was "more akin to the situation in Kelsay," and law enforcement was justified in tasing Rudley to keep control of the situation and avoid escalation. Id. "[T]he scene was a tumultuous one involving seemingly aggressive and noncompliant behavior, circumstances which we have previously held rendered officers' uses of tasers reasonable." Id. In the case before us, Jackson had been aggressive, and at first he was non-compliant. On that basis, we have determined that the first tasing was objectively reasonable. However, once Officer Stair deployed his Taser, Jackson was reduced to the ground, unable to resist arrest or flee. No reasonable officer would have believed that the Fourth Amendment supported an additional, successive use of force.[4]

Some of the very cases distinguished by this court in Kelsay and Rudley supply us here with a clearly established right against excessive force. In 2013, when the

---

[4] Indeed, an internal department review of the tasing incident resulted in a reprimand of Officer Stair.

tasings of Jackson occurred, there was sufficient case law to establish that a misdemeanor suspect in Jackson's position at the time of the second tasing – non-threatening, non-fleeing, non-resisting – had a clearly established right to be free from excessive force. See Brown, 574 F.3d at 496-97 (excessive force where misdemeanor suspect "posed at most a minimal safety threat" and "was not actively resisting arrest or attempting to flee"); Shannon v. Koehler, 616 F.3d 855, 862-63 (8th Cir. 2010) (more than de minimis force amounted to excessive force against a suspect who was not suspected of a serious crime, was not threatening, and was not resisting arrest); Montoya v. City of Flandreau, 669 F.3d 867, 871-72 (8th Cir. 2012) (excessive force found where disorderly conduct suspect was 10-15 feet from law enforcement and did not pose a threat). Moreover, we have held that "general constitutional principles against excessive force" are enough to create a clearly established right and to put a reasonable officer on notice that a particular tasing was excessive. See Shekleton v. Eichenberger, 677 F.3d 361, 367 (8th Cir. 2012). We believe it is axiomatic that Jackson had a clearly established right against excessive force at the time of the second tasing.

The third tasing occurred after Officer Stair gave several clear orders for Jackson to stop moving and lay down on his stomach, or he would be tased. Afterward, Jackson moved in the direction of Officer Stair, and he rose to his knee in an apparent attempt to get off the ground. Officer Stair then deployed his Taser for the third and final time before Jackson complied with his demands and was arrested. While we are skeptical whether Jackson was physically capable of posing a danger to law enforcement at that very instance, a reasonable officer in Officer Stair's position could have perceived Jackson to be resisting arrest and could have feared for his safety. Based on our review of the record, we conclude the third tasing was objectively reasonable.

III.

In the instant case, Officer Stair tased Jackson three times. The district court ruled that Officer Stair used a reasonable amount of force to subdue Jackson, considering the officer's conduct as a whole. The court erred by not considering and analyzing each tasing individually. We find the first and third tasings were objectively reasonable, and no Fourth Amendment violation occurred. As to the second tasing, we find there are genuine issues of material fact regarding whether Officer's Stairs use of force was excessive. If the second tasing amounted to excessive force, then Officer Stair is not entitled to qualified immunity. Jackson failed to present sufficient evidence to establish a First Amendment claim against Officer Stair or to establish municipal liability against the City. We affirm in part, reverse in part, and remand to the district court for proceedings consistent with this opinion.

WOLLMAN, Circuit Judge, concurring and dissenting.

I agree with the court that Officer Stair's first and third tasings were objectively reasonable and that Jackson's First and Fourth Amendment and municipal liability claims are without merit.

When viewed in light of his earlier manifestation of unceasing, rage-filled verbal and physical conduct, Jackson's momentary post-tasered position on the ground does not justify considering it as a clearly punctuated interim of compliance with Officer Stair's earlier commands, and thus the second tasing was not objectively unreasonable. Granted that Jackson had not at that point attempted to rise from the ground, his earlier-expressed threatened use of force against Officer Harness, when coupled with the nearly hysterical tone of his voice throughout his interaction with Stair and others nearby, justified the continued application of the taser. It may appear from our chambers-viewed observation of the entire encounter to have been a too-hasty application, but given Jackson's earlier pretasing arm-waving, rant-filled anger

-13-

and his reluctance to comply with Stair's several earlier-expressed commands and warnings, his momentarily supine position on the ground was hardly a guarantee of a no-longer aggressive subject, as was the case of the medical assistance-seeking detainee in Smith v. Conway.  In a word, then, although Officer Stair's quickly applied application following Jackson's initial fall to the ground may have been ill-advised, I do not believe that it was objectively unreasonable in the circumstances, and so I respectfully dissent from the court's decision to remand the case for a further review of that issue.

———————————————