# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3218

_____

| | | |
|---|---|---|
| Anthony Hicks, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| David Norwood, Captain, Ouachita | * | |
| County Jail; Lt. Gregory, Ouachita | * | |
| County Jail; Sgt. Baker, Ouachita | * | |
| County Jail; | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: April 12, 2011
Filed: May 24, 2011

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Anthony Hicks brought this 42 U.S.C. § 1983 action against David Norwood, captain at the Ouachita County Detention Center ("OCDC") in Arkansas, alleging use of excessive force. Hicks also claims that defendants Lieutenant Cedric Gregory and Sergeant David Baker, both officers with the Ouachita County Sheriff's Department,

violated his constitutional rights by failing to protect him from Captain Norwood.[1] After granting the defendants' motion for summary judgment with respect to Hicks's claims against them in their official capacities, the district court[2] referred the remaining claims to a magistrate judge for an evidentiary hearing pursuant to 28 U.S.C. § 636(b)(1), (3).

The parties do not dispute certain facts. On December 30, 2005, an officer with the Camden, Arkansas, Police Department arrested Hicks on an active warrant. Hicks was transported to the OCDC for booking. According to Sergeant Baker, the officer on duty in the fingerprint room, Hicks was uncooperative and refused to provide any information. After Hicks refused to confirm his personal information, Sergeant Baker directed him to change into a jail uniform. Hicks declined, complaining that the uniform trouser options were either the wrong size or a displeasing color. According to Sergeant Baker, Hicks yelled and cursed constantly throughout this exchange. Lieutenant Gregory, who was standing nearby, confirmed that Hicks was "yelling the whole time." Upon hearing the commotion, Captain Norwood entered the room.

At this point, the parties' accounts of the incident diverge. According to the three officers, Captain Norwood told Hicks to change into the jail uniform, but Hicks nonetheless attempted to grab his own pants and put them back on. Captain Norwood regained possession of Hicks's pants, and Hicks responded by jumping up from the bench on which he had been sitting. Captain Norwood pushed Hicks back onto the bench. Hicks immediately leapt up aggressively "into [Captain Norwood's] face[,]

---

[1] Additional claims against Ouachita County Jail, Nurse Jason Doe, Ouachita County Medical Center, and Doctor Jane Doe were dismissed pursuant to 28 U.S.C. § 1915A, an order that Hicks does not appeal.

[2] The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas, adopting the report and recommendation of the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas.

yelling and screaming." Captain Norwood testified that he believed that Hicks was about to punch or attack him. In response, Captain Norwood attempted to employ an "arm-bar" maneuver, a technique designed to throw Hicks off balance and take him to the floor. According to the officers, Hicks's stockinged feet slipped on the floor during the maneuver, and his head struck a nearby fingerprint table as he fell. Hicks suffered injuries to his mouth. On January 3, 2006, a dentist extracted a number of Hicks's teeth and trimmed the surrounding upper and lower bone.

Hicks paints a different picture, testifying that he did not jump up from the bench or make any aggressive movements.[3] Instead, according to Hicks, Captain Norwood entered the room and immediately slapped him in the face.[4] When Hicks began asking Captain Norwood why he was slapped, the captain struck him across the face with a long metal flashlight or shocking device, causing the injuries to Hicks's mouth and rendering him unconscious.[5] Captain Norwood "shocked" Hicks repeatedly as he regained consciousness. In addition, Hicks testified that Captain Norwood repeatedly kicked and hit him, but neither Lieutenant Gregory nor Sergeant Baker made any effort to intervene. Hicks also presented the testimony of three

---

[3] Because Hicks did not order the transcript of his testimony or the testimony of his fellow inmates, our account of Hicks's version of the incident presented at the evidentiary hearing is derived from the magistrate judge's uncontested summary of the testimony.

[4] Captain Norwood denied slapping Hicks in the face, and both Lieutenant Gregory and Sergeant Baker testified that they did not observe Captain Norwood slap Hicks.

[5] The three defendants testified that Captain Norwood had neither a flashlight nor a shocking device in his possession during the incident. Additionally, Captain Norwood testified that officers in the OCDC did not carry tasers in December 2005. According to Captain Norwood, the only similar device in the facility at that time was a "stun shield"—a three-foot tall clear plastic shield designed to deliver an electric shock.

-3-

fellow inmates, one of whom testified that he observed Captain Norwood shock Hicks with a taser three or four times but did not observe Captain Norwood punch or kick Hicks.

Faced with these wildly different accounts, the magistrate judge deemed the officers credible and found that "when Hicks jumped off the bench towards Norwood[,] it was reasonable for Norwood to believe Hicks constituted a threat to his safety" and that, during Captain Norwood's utilization of the arm-bar maneuver, "Hicks lost his footing and fell[,] hitting his mouth on the fingerprint table or the bench." Moreover, the magistrate judge found incredible Hicks's allegations that Captain Norwood used a taser and kicked him. Based on these factual findings, the magistrate judge applied the Fourteenth Amendment's "objective reasonableness" standard—applicable to pretrial detainees—and concluded that Captain Norwood did not use excessive force. As a result, Lieutenant Gregory and Sergeant Baker likewise did not violate Hicks's constitutional rights by failing to intervene. After a *de novo* review of the record, the district court adopted the magistrate judge's report and recommendation in full and dismissed Hicks's claims. Hicks appeals.

Although mindful that our adversary system "rel[ies] on the parties to frame the issues for decision," *Greenlaw v. United States*, 554 U.S. 237, 243 (2008), we charitably construe Hicks's appeal to comprise both a challenge to the district court's findings of fact and—as Hicks appears to have abandoned his initial factual account of the incident—a challenge to the court's conclusions of law. When evidence is gathered by means of an evidentiary hearing conducted pursuant to 28 U.S.C. § 636(b)(1), "the hearing before the magistrate judge is the equivalent of a bench trial, and we review the district court's findings of fact for clear error." *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007).[6] Legal conclusions are reviewed *de novo*. *See Moody v. Proctor*, 986 F.2d 239, 241 (8th Cir. 1993).

---

[6] Hicks did not request a jury trial.

To the extent Hicks argues that the district court clearly erred in finding his version of events incredible, Hicks's decision not to order a transcript of his testimony or the testimony of his fellow inmates renders the district court's assessment of the evidence unreviewable. "It is important, if not essential, to the reviewing court that an appellant . . . bring before this court all parts of the proceedings below necessary for a determination of the validity of any claimed error." *Schmid v. United Bhd. of Carpenters and Joiners of Am.*, 827 F.2d 384, 386 (8th Cir. 1987) (quoting *Ries v. Lynskey*, 452 F.2d 172, 178 (7th Cir. 1971)); *see also* Fed. R. App. P. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion."). On the basis of the record before us, it is impossible to meaningfully review the district court's decision to credit the defendants' testimony rather than that of the plaintiff.[7] Hence, we accept the district court's factual findings as true and proceed to analyze the court's legal conclusion that Captain Norwood's conduct did not violate the Constitution.

It is settled in this circuit that the Fourth Amendment's "objective reasonableness" standard for arrestees governs excessive-force claims arising during the booking process. *See Wilson v. Spain*, 209 F.3d 713, 716 (8th Cir. 2000); *Moore v. Novak*, 146 F.3d 531, 535 (8th Cir. 1998). Under this analysis, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Wilson*, 209 F.3d at 716 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In the present case, both Captain Norwood's decision to use force and the amount of force used were objectively reasonable under the circumstances. The report and

---

[7] We note, however, that the "decision to credit testimony of witnesses who tell coherent and facially plausible stories that are not contradicted by extrinsic evidence 'can virtually never be clear error.'" *United States v. Dehghani*, 550 F.3d 716, 720 (8th Cir. 2008) (quoting *United States v. Hines*, 387 F.3d 690, 695 (8th Cir. 2004)).

recommendation adopted by the district court found that Hicks refused to comply with directions, loudly abused the correctional officers, and aggressively leapt toward Captain Norwood. We agree that "it was reasonable for Norwood to believe Hicks constituted a threat to his safety" and that his effort to subdue Hicks by means of the arm-bar maneuver was a reasonable use of force.[8] Accordingly, Captain Norwood did not violate Hicks's Fourth Amendment rights.

We now turn to Hicks's claims against Lieutenant Gregory and Sergeant Baker, alleging that they violated his constitutional rights by failing to intervene when Captain Norwood attempted the arm-bar maneuver. To be sure, "an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment." *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009), *cert. denied*, 562 U.S. ---, 131 S. Ct. 69 (2010). To establish such a claim, however, a plaintiff must show, *inter alia*, that "the officer observed or had reason to know that excessive force would be or was being used." *Id.* (quoting *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008)). Thus, our holding that Captain Norwood did not use excessive force is fatal to Hicks's claims that the remaining defendants unconstitutionally failed to intervene.

The judgment of the district court is affirmed.

_____

_____

[6] Because our inquiry turns on the objective reasonableness of Captain Norwood's conduct, Hicks's protestations that Captain Norwood "use[d] . . . brute force to satisfy his ego" and "viewed Mr. Hicks as being not valuable" have no bearing on our analysis. *See Graham*, 490 U.S. at 397; *Wilson*, 209 F.3d at 716, 717.